## No. 28417

**Colorado River Water Conservation District v. Municipal Subdistrict, Northern Colorado Water Conservancy District**

(610 P.2d 81)

Decided September 17, 1979.

Delaney & Balcomb, Kenneth Balcomb, Scott Balcomb, for objector-appellant.

Davis, Graham & Stubbs, John M. Sayre, Robert V. Trout, for applicant-appellee.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

The appellant, the Colorado River Water Conservation District (the River District), appeals from a conditional decree entered by the District Court, Water Division No. 5, which granted to the appellee, the Municipal Subdistrict, Northern Colorado Water Conservancy District (the Subdistrict) the conditional rights to the use of water to be exported from the natural basin of the Colorado River. In reaching its decision, the water court determined that the appellee was in compliance with the provisions of section 37-45-118(1)(b)(IV), C.R.S. 1973 (hereafter subparagraph IV),[1] which specifies certain requirements for trans-basin exportation of water by water conservancy districts and subdistricts thereof. In our view the Subdistrict failed to meet the requirements of subparagraph IV. We reverse and remand for further proceedings consistent with directions contained in this opinion.

In August 1968, claims were filed on behalf of Longmont, Fort Collins, Greeley, Estes Park and Boulder for the diversion of water from the natural basin of the Colorado River for the creation and operation of the Windy Gap Water System. This diversion varied in amount between 30,000 and 78,000 acre feet depending on the streamflow in the particular year. Subsequent to the filing, the Subdistrict was created pursuant to section 37-45-120, C.R.S. 1973, to advance the project. The appellant thereafter filed a protest to all of the claims, alleging noncompliance with C.R.S. 1963, 150-5-13(2)(d), now section 37-45-118(1)(b)(IV), C.R.S. 1973.

A referee was appointed, and trial commenced in April 1972. In April 1974 a "Master Referee Report" was filed. The referee found that the Windy Gap Water System was devised to operate in compliance with Sen-

---

[1] The subparagraph in issue provides: "(IV) However, any works of facilities planned and designed for the exportation of water from the natural basin of the Colorado river and its tributaries in Colorado, by any district created under this article, shall be subject to the provisions of the Colorado river compact and the 'Boulder Canyon Project Act.' Any such works or facilities shall be designed, constructed and operated in such manner that the present appropriations of water, and in addition thereto prospective uses of water for irrigation and other beneficial consumptive use purposes, including consumptive uses for domestic, mining, and industrial purposes, within the natural basin of the Colorado river in the state of Colorado, from which water is exported, will not be impaired nor increased in cost at the expense of the water users within the natural basin. The facilities and other means for the accomplishment of said purpose shall be incorporated in and made a part of any project plans for the exportation of water from said natural basin in Colorado."

ate Document 80[2] and that the requirements of subparagraph IV were met.

The Subdistrict recognized that a plan had to be submitted to comply with subparagraph IV if it was to obtain court approval of the referee's report. *See, Central Colorado Water Conservancy District v. Colorado River Water Conservation District,* 186 Colo. 193, 526 P.2d 302 (1974). The Subdistrict's plan was submitted to the water court in broad conceptual form, but until briefs were filed in this Court the plan was never fully set forth. Nevertheless, in February 1978, Water Division No. 5 issued its Memorandum Opinion and Interlocutory Decree, adopting the recommendation of the referee on the theory that failure to finalize a plan could be dealt with by cancelling the conditionally granted water rights. A final order denying the River District's motion for a new trial or to amend the decree followed, and from that order the River District appeals.

The initial question we must address is the standard to be applied in reviewing the water court's decision. Ordinarily, this Court is bound by the presumption that the findings of a trial court are not to be overturned unless clearly erroneous or completely unsupported by the evidence. *See e.g., Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978). But where judgment is entered on the basis of documentary evidence alone, an appellate court is as competent as the trial court to review the sufficiency of the evidence and apply the law thereto. *Stephenson v. Stephenson,* 134 Colo. 96, 299 P.2d 1095 (1956).

In this case the parties entered into a stipulation designating the evidence which was presented to the master referee and which constituted the only matters to be considered by the water judge. The stipulation provided for consideration of all transcribed testimony, all exhibits presented to the referee, together with the referee's report and order, and certain exhibits which were admitted in the water court. In addition, the substantive issues raised here involve a limited number of operative facts. Under such circumstances a reviewing court may properly draw its own conclusions from the evidence. *Industrial Commission v. Betz,* 111 Colo. 401, 142 P.2d 389 (1943). Accordingly, we conclude that it is proper for us, under the circumstances of this case, to determine whether the record supports a finding that the requirements of the statute were met.

We turn now to the substantive issue raised on this appeal: whether the Municipal Subdistrict complied with subparagraph IV. Resolution of this issue involves two related inquiries: first, when was the Subdistrict required to state its plan and, second, was that plan set forth with sufficient detail.

---

[2] 75th Congress, 1st Session (1937). Senate Document 80 is part of a report describing facilities of the Colorado-Big Thompson Project, a federal reclamation project, containing an analysis of prospective uses of water.

## A. *Timing of Plan Submission*

The trial court determined that a plan in compliance with subparagraph IV need not be demonstrated at the time a claim for conditional water rights is decreed. Under the procedures set forth by the trial court, an applicant's obligation to demonstrate such a plan arises at a later stage in the appropriation process, at which time a "reasonable diligence" hearing is held to determine compliance with subparagraph IV.

■ We believe that the trial court's interpretation ignores the language and purpose of the statute, and therefore is erroneous. Subparagraph IV is a clear limitation upon the general powers of the water conservancy districts and subdistricts. It begins with the word "however" and conditions the grant of power to "take by appropriation . . . water . . . water rights . . . and sources of water supply . . . ." The intent of the General Assembly was to protect not only present appropriations but "in addition thereto prospective uses of water" within the natural basin of the Colorado River. The mechanism for accomplishing this is the submission of project plans detailing the design, construction and operation of facilities aimed at achieving these stated goals. To allow the required plan to be submitted at a later hearing would subvert the legislative intent of subparagraph IV, which is to obtain a definition and description of the plan in advance of the conditional decree during the early stages of the decree process. In addition, such a procedure would result in substantial expenditures of public funds between the time of the conditional decree and the hearing on reasonable diligence without assurance that the plan would protect the present and future appropriators within the natural basin of the Colorado River.

Our decision in *Central Colorado, supra,* left open the question whether plans in compliance with subparagraph IV must be submitted prior to the granting of a conditional water decree. In that case, an applicant who refused to comply with subparagraph IV *after* a conditional decree had been granted was held to be subject to decree cancellation. In so holding we noted:

"Appellant owes its authority to appropriate water to the statute which gave it existence and which imposed conditions upon it before it could obtain such sought-for appropriation. It was compelled to obey the mandate of the statute not only in how the District is formed but also in how it, through its directors, continues to function." 186 Colo. at 196, 526 P.2d at 304.

■ We now extend our ruling in *Central Colorado* and hold that in order to obtain a conditional decree a conservancy district or subdistrict must first comply with the statute "which gave it existence and which imposed conditions before it could obtain such sought-for appropriation."

### B. *Adequacy of the Subdistrict's Plan*

The following plan was submitted by the Municipal Subdistrict:

1) The Windy Gap Water System will divert water from the upper drainage area of the Colorado River at Windy Gap and transport it back upstream to Granby Reservoir.

2) The existing facilities of the Colorado-Big Thompson Project will be used to transport the water from Granby Reservoir to the points of delivery for ultimate use on the Eastern Slope.

3) All diversions will be made strictly under the priority system, thus protecting all conditional and absolute water rights senior in priority to the Windy Gap Water System decrees.

4) Future use of water in the natural basin of the Colorado River will be protected by:

i) bypassing 75 cubic feet per second of water or the run of the river, whichever is less, at all times at the Windy Gap Diversion Dam, and

ii) complete compliance by the Municipal Subdistrict with all of the terms and provisions of Senate Document 80 (which contains a finding that operation under its terms will not harm present or prospective uses of waters on the Western Slope) in the design, construction and operation of the Windy Gap Water System.

The water court determined that a plan in compliance with subparagraph IV need only be in "broad conceptual form" at the time of initiation of a conditional decree and accordingly declared the Subdistrict's plan to be adequate.

■ We hold that the plan did not comply with the statute which required that "[t]he facilities and other means for accomplishment of said purpose shall be incorporated in and made a part of any project plans for the exportation of water from said natural basin in Colorado." Section 37-45-118(1)(b)(IV), C.R.S. 1973.

■ The plan required by subparagraph IV must be at least as detailed as that necessary to document the elements of an appropriation. An appropriation is "the intent to take accompanied by some open physical demonstration of intent. . . ." *Elk Rifle Water Co. v. Templeton,* 173 Colo. 438, 446, 484 P.2d 1211, 1215 (1971); *Four Counties Water Users Assoc. v. Colorado River Water Conservation District,* 159 Colo. 499, 414 P.2d 469 (1966). The physical acts manifesting the intent necessary to obtain a conditional decree have been further defined:

Certainly the first step demanded by the Rule is nothing short of an open and notorious physical demonstration, conclusively indicating a fixed purpose to diligently pursue and, within a reasonable time, ultimately acquire a right to the use of water, and as its primary function is to give notice to those subsequently desiring to initiate similar rights, it must necessarily be of such a character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on

inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved. *Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 165, 162 P. 161, 163 (1916).

The requirement that a plan need only be in broad conceptual form impermissibly weakens these common law mandates. The purpose of demanding physical acts manifesting intent is to put others on notice as to the demand an appropriation will make upon the available water supply. Consistent with this theme, subparagraph IV was enacted to put in-basin users on notice as to the supply remaining after a proposed appropriation. As noted, the provision appears as a limitation on the otherwise general power to appropriate and must therefor be considered in a determination of whether the intent to appropriate exists in sufficiently specific form. The specificity mandated by subparagraph IV, then, is nothing short of a physical demonstration that any project works or facilities will be "designed, constructed and operated in such a manner that the present appropriations of water, and in addition thereto prospective uses of water . . . within the natural basin of the Colorado river . . . will not be impaired nor increased in cost at the expense of water users within the natural basin."

The plan submitted by the Subdistrict fails to meet this standard. The plan is phrased in broad terms; it does not constitute a physical demonstration of the design, construction and operational aspects of diversion facilities required by subparagraph IV. This opinion deals specifically with a special statutory requirement which is not part of the general law relating to conditional decrees. The plan fails to take into account prospective uses in the natural basin of the Colorado River, as the statute requires.

Accordingly, we reverse and remand for further proceedings consistent with the directions contained in this opinion.