The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Peter Paul GALLEGOS, Defendant-Appellee.

No. 83SA332.

Supreme Court of Colorado, En Banc.

Dec. 17, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Deputy Atty. Gen., Appellate Section, Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Steve E. Alcala, Deputy State Pub-

lic Defender, Pueblo, for defendant-appellee.

DUBOFSKY, Justice.

The People appeal a Pueblo County district court order refusing to admit certain Department of Social Service rules and regulations (DSS rules) into evidence in a criminal prosecution for welfare fraud and theft. The court found that the People had failed to demonstrate that these rules were properly "promulgated and issued" in accordance with section 24–4–103, 10 C.R.S. (1982), and that *People v. More*, 668 P.2d 968 (Colo.App.1981), *cert. denied* Aug. 22, 1983, therefore required their exclusion. We today restrict the reach of *More* and disapprove the ruling of the district court.

The defendant Peter Paul Gallegos was charged with fraudulently obtaining public assistance in excess of the amounts to which he was entitled,[1] and with two counts of theft of food stamp benefits.[2] These offenses were alleged to have occurred between January 1, 1979 and June 30, 1980. Prior to trial, the People requested an advance ruling on the admissibility of certain DSS rules that it intended to introduce at trial. The district court postponed any ruling on this issue until trial.

At trial, two prosecution witnesses testified as to the manner in which DSS rules are made available to the public. Johanna Billmeyer, an administrative officer for the Secretary of State, explained that current regulations are available to the public in a copy of the Colorado Code of Regulations (CCR) maintained in the Secretary of State's office, that all rules are also maintained on file in hard copy, that all rules are listed on a docket by filing date, issue date, agency and title or description, and that amended or repealed rules may be found through a cross-index with current rules. Candy Herring, an employee of the Public Record Corporation and editor of the CCR, testified that the DSS rules at issue in this case were published monthly in the CCR. She also testified that the CCR is mailed monthly to anyone paying a fee for that service.

Following this testimony, the prosecution moved for the introduction into evidence of DSS rules governing eligibility for food stamps and public assistance. The defendant objected, and the district court excluded the evidence because the prosecution had failed to prove that the rules were properly "promulgated and issued" in accordance with the requirements of section 24–4–103. When the prosecution stated that it could not proceed in the face of this ruling, the defendant moved to dismiss the charges against him. The court granted the defendant's motion. The People now challenge the district court's exclusion of the DSS rules, contending that the burden of demonstrating noncompliance with section 24–4–103 should be placed upon the defendant rather than the People.

The district court's exclusionary ruling was predicated upon section 24–4–103(10), which governs the admission of administrative rules and regulations into evidence against the accused in a criminal trial. *People v. Bobian*, 626 P.2d 1132 (Colo. 1981); *People v. Williams*, 197 Colo. 559, 596 P.2d 745 (1979). Section 24–4–103(10) provides:

> No rule shall be relied upon or cited against any person unless, if adopted after May 1, 1959, it has been published and, whether adopted before or after said date, has been made available to the public in accordance with this section.

Therefore, for the DSS rules to be admissible here to show the defendant's ineligibility for the benefits he had received, they must have been "made available to the public in accordance with" section 24–4–103.

■ In finding that the requirements of section 24–4–103(10) had not been met, the district court relied upon *More*. There, the Court of Appeals held that, once the defendant objects to the admission of administrative rules and regulations, the burden

---

**1.** Section 26–1–127(1), 11 C.R.S. (1982).

**2.** Section 18–4–401, 8 C.R.S. (1973).

falls on the prosecution to establish that "the rule was in fact regularly issued or promulgated." 668 P.2d at 970. We note first that this language is far broader than the actual mandate of section 24–4–103(10). That statute conditions the admissibility of administrative rules and regulations only upon proper publication and public availability. Thus, wherever the burden of proof may fall, the required showing relates only to publication and availability; no showing need be made that there has been compliance with provisions of section 24–4–103 governing other aspects of the issuance or promulgation of rules.

At the time of the offenses alleged in this case, each administrative agency was required to make available to the public and deliver to anyone upon request a copy of its current rules. § 24–4–103(9), (11)(k), 10 C.R.S. (1982).[3] In addition, the agency was required to file with the Secretary of State's office a copy of all rules, together with the attorney general's opinion thereon, within ten days of adoption. § 24–4–103(11)(d). In turn, the Secretary of State was commanded to keep on file all such rules and attorney general opinions, and to revise such rules in accordance with any actions taken by the legislature. § 24–4–103(11)(d), (12). The current rules were to be cross-indexed with amended and repealed rules. *Id.* 24–4–103(12), 10 C.R.S. (1973 & Supp.1979).[4] The Secretary of State was also expected to maintain a docket system listing the time and date of each filing, the agency responsible for the rule, and the title or description of the rule; these listings were to be cross-indexed. § 24–4–103(11)(e). All new rules were to be published monthly in the CCR. § 24–4–103(11)(a)–(c). The CCR was to be made available to any member of the public upon request and payment of a fee, and it was to be mailed monthly to all persons requesting and paying for this service. § 24–4–103(11)(f)–(i).[5]

Even if the burden of proving compliance with these provisions were to be placed on the People, the evidence in this case met that burden with regard to many of these public availability requirements. DSS rules were maintained for public inspection in the office of the Secretary of State, along with a docket sheet listing such rules by filing date, agency and title or description. The current rules were cross-indexed with amended and repealed rules. Such rules were published monthly in the CCR and mailed to anyone paying the required fee. However, no evidence was presented concerning the availability of the rules through the DSS itself, nor did the testimony show that the Secretary of State's docket was cross-indexed as required by statute, or that attorney general opinions were filed along with the rules. Because of these evidentiary gaps, it becomes necessary for us to determine where to place the risk of nonpersuasion on this issue.

We agree with the court's conclusion in *More* that the burden of persuasion under section 24–4–103(10) lies with the prosecution. We have read this section as a "statutorily imposed rule of evidence.... [that] bears upon the competence of the rules as evidence." *Bobian*, 626 P.2d at 1135. Like other rules governing the competence of evidence, section 24–4–103(10) acts to exclude relevant evidence in order to further an overriding public policy: "The purpose of the provision is one of due process, to ensure that a correct current copy of regulations promulgated by administrative agencies will be available to members

---

**3.** Although section 24–4–103(9), (11) and (12) has been amended since the events of this case, the relevant provisions remain unchanged except where otherwise noted.

**4.** This requirement has since been eliminated. Ch. 276, sec. 1, § 24–4–103(12), 1981 Colo.Sess. Laws 1133. The current version of this section is codified at section 24–4–103, 10 C.R.S. (1982).

**5.** The defendant also contends that the People failed to demonstrate compliance with former section 24–4–103(11)(j), 10 C.R.S. (1973), requiring "actual notice" of newly promulgated rules to all persons affected thereby. However, that statute had been repealed by the time of the alleged offenses in this case. Ch. 295, sec. 1, § 24–4–103(11)(j), 1977 Colo.Sess.Laws 1138, 1140.

of the public." *Bobian,* 626 P.2d at 1135. Where a rule excludes relevant evidence on policy grounds, the burden of establishing a foundation for admission generally rests upon the proponent of the evidence. *McCormick on Evidence* § 53 at 136 n. 8 (E. Cleary 3rd ed. 1984) (hereinafter "McCormick"); 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5053 at 262 (1977) (hereinafter "Wright"). Such an allocation of burdens ensures in each case an affirmative demonstration that the legislatively preferred policy—here, the public availability of administrative rules and regulations—is being carried out. *See In re Regional Rail Reorganization Proceedings,* 421 F.Supp. 1061, 1073 (Special Court 1976) (burden of proof placed so as to effectuate legislatively preferred policy).

▇▇▇ Traditionally, a presumption of regularity attaches to administrative acts. *State Personnel Board v. District Court,* 637 P.2d 333, 337 (Colo.1981); *Lloyd A. Fry Roofing Co. v. Department of Health,* 191 Colo. 463, 475, 553 P.2d 800, 809 (1976); *City of Colorado Springs v. District Court,* 184 Colo. 177, 181, 519 P.2d 325, 327 (1974); *Public Utilities Commission· v. District Court,* 163 Colo. 462, 468, 431 P.2d 773, 776–77 (1967). In civil cases, a presumption operates to place upon the adverse party the burden of producing evidence sufficient to rebut the presumption, while *retaining* the burden of persuasion where it originally lay. C.R.E. 301. The burden of production has been allocated in the same fashion where a foundation for competent evidence must be laid: while the proponent of the evidence retains the burden of persuasion, courts often will require the opponent to produce evidence demonstrating that grounds for objection exist. McCormick § 53 at 136 n. 8; Wright § 5053 at 262. We believe that the presumption of

administrative regularity requires a similar allocation of burdens in the present case.[6] Laying a foundation for the admission of administrative rules and regulations consumes a great deal of trial time, as the testimony in the present case indicates; due to the high probability of administrative regularity, this strain on judicial resources in most cases is unnecessary. We therefore hold that the defendant must produce some evidence of the grounds for his objection under section 24–4–103(10) before the prosecution may be required to demonstrate compliance with that statute.

▇▇ In the present case, the defendant failed to meet his burden to produce some evidence of noncompliance with the relevant provisions of section 24–4–103. He elicited no evidence that the rules were unavailable through the DSS, that the Secretary of State's docket was not cross-indexed, or that the attorney general's opinions were not filed as required. Therefore, the burden never shifted to the People to show compliance with these requirements, and the district court was bound to admit the rules over the defendant's objection.

The ruling of the district court is disapproved.

KIRSHBAUM, J., does not participate.

---

6. Adoption of this presumption in the context of a criminal trial does not require us to engage in a due process analysis. Such an analysis is appropriate only where the presumed fact aids in establishing an element of the crime itself. *See, e.g., County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Here the presumed fact operates only to establish a foundation for the admission of evidence.