**BOARD OF MEDICAL EXAMINERS,**
State of Colorado, Petitioner,

v.

**S. Crawford DUHON, M.D., Respondent.**

No. 93SC505.

Supreme Court of Colorado,
En Banc.

May 15, 1995.

court of appeals' determination, we affirm and return the case to that court with directions.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Linda L. Siderius, First Asst. Atty. Gen., Matthew E. Norwood, Asst. Atty. Gen., Regulatory Law Section, Denver, for petitioner.

Sheila H. Meer, P.C., Sheila H. Meer, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Board of Medical Examiners v. Duhon,* 867 P.2d 20 (Colo.App.1993), the court of appeals reversed the trial court's order enforcing a subpoena *duces tecum* issued by the petitioner Board of Medical Examiners (the Board) pursuant to the Colorado Medical Practices Act, §§ 12–36–101 to –137, 5B C.R.S. (1991) (the Act) and served upon the respondent, S. Crawford Duhon, M.D. (Duhon).[1] The subpoena demanded the production of patient records reflecting Duhon's use of a diagnostic device known as INTERRO.[2] Concluding that section 12–36–104(1)(b) of the Act must be construed together with the provisions of section 12–36–118(4) thereof, the court of appeals held that the evidence in the record did not support the trial court's conclusion that the subpoena was reasonable. *Duhon,* 867 P.2d at 24. Having granted the Board's petition for certiorari review of the

I

On July 19, 1990, the Board notified Duhon that it was initiating a complaint against him for alleged professional misconduct pursuant to section 12–36–118(4)(a) of the Act.[3] The complaint, issued after the Board had received information from the California Department of Health Services regarding Duhon's use of the INTERRO device, in general requested Duhon to furnish information about some of his patients.[4]

On October 1, 1990, Duhon filed an answer to the complaint which included general information as to the nature of the corroborative procedures he employed in connection with his use of the INTERRO device but did not include patient names.

On November 14, 1991, the Board issued a subpoena *duces tecum* to Duhon requesting him to produce "complete office records for all patients in which the INTERRO device was used as a diagnostic tool by [Duhon] for the time frame of January 1, 1991, through November 13, 1991," pursuant to section 12–36–104(1)(b) of the Act. That section states in pertinent part as follows:

> **Powers and duties of board.** (1) In addition to all other powers and duties conferred and imposed upon the board by this article, the board has the following powers and duties to:

1. Duhon is a clinical ecologist and environmental practitioner first licensed to practice medicine in Colorado in 1945. At the time of the administrative proceedings herein, he was engaged in the practice of medicine two days per week.

2. According to the evidence in the record, this device measures the galvanic skin response to an electrical current when electrodes are touched to various places on the hands and feet of a patient that correspond to acupuncture pressure points. The measurements are deemed to reflect allergic reactions or malfunctioning bodily functions.

3. Section 12–36–118(4)(a) of the Act requires the Board to notify a physician who is the subject of a complaint of the nature of "all matters complained of" and that the physician may respond to such charges within 20 days. § 12–36–118(4)(a), 5B C.R.S. (1991). The parties refer to the Board's initial document as a "20–day let-

ter." For consistency of reference, we refer to such document as the "complaint" and shall refer to the response as the "answer."

4. As the court of appeals noted, the trial court did not consider the contents of the complaint in issuing its order because a copy thereof was not introduced into evidence prior to the entry of that order. *Duhon,* 867 P.2d at 23. After the trial court entered its order Duhon filed a motion to stay the effect thereof pending appeal. The trial court held a hearing on that motion, during which Duhon offered to introduce certain evidence, including copies of the complaint and of Duhon's answer thereto. In denying Duhon's motion for stay, the trial court commented that it had not considered the offered evidence when it entered its order of enforcement.

. . . .

(b) Make investigations, hold hearings, and take evidence in all matters relating to the exercise and performance of the powers and duties vested in the board and, in connection with any investigation (whether before or after a formal complaint is filed pursuant to section 12–36–118) or hearing and through any member, the secretary, or chief administrative officer thereof, subpoena witnesses, administer oaths, and compel the testimony of witnesses and the production of books, papers, and records relevant to any inquiry or hearing. Any subpoena issued pursuant to this article shall be enforceable by the district court.

§ 12–36–104(1)(b), 5B C.R.S. (1991).

Duhon refused to comply with the subpoena, asserting that it was burdensome and oppressive and exceeded the Board's authority. Subsequently, the Board filed a Petition for Enforcement of Administrative Subpoena *Duces Tecum* with the trial court, pursuant to section 12–36–104(1)(b) of the Act.[5] The Board's petition contained the following pertinent statements:

It is the Board's position that such measurement [of the galvanic skin response to an electrical current by INTERRO] is utterly meaningless for diagnosing physical conditions in the human body, certainly as it is purported to be interpreted by the INTERRO device. In [previous physician disciplinary] proceedings, the Board alleged that the use of this device failed to meet generally accepted standards of medical practice.

Copies of the subpoena and of the return of service were attached to the petition.

On March 25, 1992, Duhon filed a Motion to Quash Administrative Subpoena, asserting, *inter alia*, that the subpoena was not authorized by the Act. Duhon also issued a subpoena directing the Board to produce information concerning its investigation of other physicians who have used the INTERRO device. The Board in turn filed a motion to quash Duhon's subpoena, asserting that Duhon was not entitled to issue such subpoena.

On May 7, 1992, the trial court conducted a hearing on the two motions to quash subpoena. The Board introduced no evidence at the hearing, although the Board's attorney stated that the "Board would like to get those records to see if Dr. Duhon is confirming his diagnosis with another medically established diagnostic product or procedure. . . ." Duhon's attorney introduced two photographs of the INTERRO device into evidence, requested an evidentiary hearing, and described as an offer of proof eight additional documents and anticipated testimony by two witnesses.[6] The trial court denied Duhon's requests.

At the conclusion of the hearing, the trial court granted the Board's motion to quash Duhon's subpoena and denied Duhon's motion to quash the Board's subpoena. The trial court also made the following findings and conclusions:

I would find from the statements of [the Board's counsel] that this subpoena is for a valid purpose or lawfully authorized purpose, and that is to determine whether or not in the use of INTERRO as a diagnostic device, or method, Dr. Duhon has received or obtained confirmation of that diagnosis by other physicians [sic].

The trial court further found that the information sought was relevant to the inquiry "because if there were going to be an indication of confirmation of the use of INTERRO as a diagnostic tool, it would logically be revealed in the medical records." The trial court rejected Duhon's arguments that the Board's subpoena was superfluous or overly burdensome and that the medical records were protected by the physician/patient privilege established by section 13–90–107(1)(d)(III)(C), 6A C.R.S. (1987).

On appeal, the court of appeals reversed that portion of the trial court's order enforcing the Board's subpoena and denying Duhon's motion to quash said subpoena. The court of appeals initially concluded that the Board has no authority to issue a subpoena

---

5. This subsection provides in pertinent part that any "subpoena issued pursuant to [the Act] shall be enforceable by the district court." § 12–36–104(1)(b), 5B C.R.S. (1991).

6. Copies of the complaint and answer were among these eight documents.

pursuant to the Act until at least after a complaint has been initiated, the subject of the complaint has been notified of all matters complained of, and the complaint has been referred to an inquiry panel for investigation pursuant to section 12–36–118(4) of the Act. *Duhon,* 867 P.2d at 24. The court also held that because the Board did not present any evidence delineating the specific contents of the complaint and answer, establishing the dates of such documents, or establishing when an inquiry panel had been convened, the Board failed to satisfy its burden of proving the regularity and reasonableness of the subpoena as required by this court's decision in *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980).

## II

The Board argues, contrary to the conclusion reached by the court of appeals, that the Act grants it authority to issue administrative subpoenas at any time. The Board argues alternatively that it has inherent authority to issue such subpoenas. We disagree.

### A

■ In construing statutes courts must give effect to the intent giving rise to the legislation. *Shapiro and Meinhold v. Zartman,* 823 P.2d 120, 123–24 (Colo.1992). To carry out that responsibility courts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *Id.* If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo. 1992); *Bloomer v. Board of County Comm'rs,* 799 P.2d 942, 944 (Colo.1990). That is, if courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said. *Griffin v. S.W. Devanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989); *State Bd. of Equalization v. American Airlines, Inc.,* 773 P.2d 1033, 1040 (Colo.1989). When the General Assembly adopts a comprehen-

sive regulatory program, the legislation should be construed as a whole when possible, giving effect to all of its parts in the context of the entire scheme. *Martinez v. Continental Enters.,* 730 P.2d 308, 315 (Colo. 1986).

### B

■ The court of appeals concluded that section 12–36–104(1)(b) of the Act, authorizing administrative subpoenas for investigative purposes, must be construed together with section 12–36–118 thereof, defining the Board's authority to conduct informal and formal investigations. The Board contends that section 12–36–104(1)(b) authorizes it to issue subpoenas at any time to carry out its general administrative responsibilities and is not limited to circumstances wherein the Board elects to exercise its authority to discipline license holders. In essence, the Board argues that section 12–36–104 and section 12–36–118 are unrelated and should not be construed together. We agree with the court of appeals' conclusion.

Section 12–36–104 of the Act defines the general powers and duties of the Board and authorizes the Board to issue administrative subpoenas. Section 12–36–104(1)(b) authorizes the Board, "in connection with any investigation (whether before or after a formal complaint is filed pursuant to section 12–36–118) or hearing" to subpoena witnesses, administer oaths, compel witnesses to testify, and compel "the production of books, papers, and records relevant to any *inquiry* or *hearing.*" § 12–36–104(1)(b), 5B C.R.S. (1991) (emphasis added). The Board argues that this statutory language authorizes it to issue subpoenas for documents—and, presumably, to subpoena witnesses and take oaths—at any time it is required to or elects to exercise its investigative authority. The Board emphasizes the initial clause of section 12–36–104(1)(b), which clause grants the Board general authority to "make investigations, hold hearings, and take evidence," in carrying out its assigned administrative responsibilities, to support its argument. § 12–36–104(1)(b), 5B C.R.S. (1991).

This argument ignores critical and unambiguous language in the second clause of section 12–36–104(1)(b) of the Act that does not relate to the general investigative authority of the Board but that delineates specifically the Board's authority to issue administrative subpoenas. The subpoena power of the Board may be exercised only in two circumstances: in connection with a hearing, and in connection with an investigation before or after the filing of a formal complaint pursuant to section 12–36–118 of the Act. The General Assembly has expressly required that the two sections be construed together to ascertain the scope of the Board's authority to issue subpoenas when, as in this case, the subpoena is not issued in connection with an administrative hearing.

Section 12–36–118(4)(a) of the Act contains the following pertinent provisions:

**Disciplinary action by board—immunity.** ... (4)(a) Complaints in writing relating to the conduct of any physician licensed or authorized to practice medicine in this state may be made by any person or may be initiated by the board on its own motion. The physician complained of shall be given notice by certified mail of the nature of all matters complained of and shall be given twenty days to make explanation or answer thereto. Upon receipt of the physician's answer or at the conclusion of twenty days if no answer has been received, the matter shall be referred to one panel acting as an inquiry panel for that particular case, referred to in this subsection (4) as the "inquiry panel", for investigation. The investigation may be made by one or more members of the inquiry panel, by one or more physicians who are not members of the board, by a member of the staff of the board, or by a professional investigator, as the inquiry panel directs, and it shall be entirely informal.

§ 12–36–118(4)(a), 5B C.R.S. (1991). Section 12–36–118(4)(a) thus provides that any person or the Board itself may initiate a written complaint regarding the conduct of a physi-

cian licensed to practice medicine in Colorado. The section also provides that any physician who is the subject of a complaint must be given notice by certified mail of the nature of all matters complained of; that such physician must be permitted to file an answer or otherwise respond to the complaint within twenty days; and that only upon receipt of the physician's response or after the elapse of twenty days if no response is received within that period of time shall the matter "be referred to ... an inquiry panel for that particular case ... for investigation." § 12–36–118(4)(a), 5B C.R.S. (1991). The language is unambiguous. When a complaint is filed, an investigation into the allegations of professional misconduct contained therein must be conducted by an inquiry panel. However, the inquiry panel cannot commence such investigation until the requisite twenty-day period for the filing of a response to the complaint has elapsed.

■ These provisions reflect a legislative policy to require a delay of the initiation of investigative proceedings of alleged complaints of professional misconduct. That policy is also reflected by the provisions of section 12–36–118(4)(b) of the Act requiring the Board to "cause an investigation to be made" when it is informed of any of three specific factual circumstances. § 12–36–118(4)(b), 5B C.R.S. (1991).[7] Notification of the filing of a complaint and the lapse of the prescribed twenty-day period for the filing of a response thereto serve as triggering events for mandatory administrative investigative action. An inquiry panel must conduct an investigation of conduct complained of after those two events have occurred—but is prohibited by the express terms of the statute from doing so before that time. The scope, duration, and cost of any investigation will in many cases be determined by the content of the response as well as the content of the complaint.

■ Section 12–36–118(4)(c) of the Act provides that upon completion of the requi-

---

7. The Board must conduct an investigation when it has been notified that disciplinary actions have been taken against a physician by a hospital or pursuant to professional review, when a medical malpractice judgment or settlement has been entered against a physician, or when a physician has resigned from a hospital for medical misconduct. § 12–36–118(4)(b), 5B C.R.S. (1991).

site investigation the inquiry panel can take no further action, can take informal action admonishing the physician, or can refer the matter to the attorney general for preparation and filing of a "formal complaint." § 12–36–118(4)(c)(IV), 5B C.R.S. (1991). All formal complaints seeking disciplinary action against a physician shall be filed with the Board and are then referred to the hearing panel to hear the complaint and make findings and recommendations. § 12–36–118(5)(a), (d), 5B C.R.S. (1991). The administrative scheme established by section 12–36–118 reflects the legislative determination that the Board's authority to initiate disciplinary proceedings against licensed physicians and, in conjunction therewith, to conduct investigations of such physicians must be exercised with some degree of caution. The temporal limitations imposed by section 12–36–118(4)(a) of the Act assume added significance in view of the fact that the Board must conduct an investigation not only when it initiates a complaint, as in the instant case, but also when any person files a written complaint against a physician and in the circumstances prescribed by section 12–36–118(4)(b) thereof. While the Board must investigate every written complaint of physician misconduct, such investigation may not be initiated until the inquiry panel has the opportunity to consider the physician's response to the allegations of misconduct that trigger the Board's mandatory investigative responsibility.

Section 12–36–118 of the Act defines the meaning of the terms "investigation," "inquiry," "formal complaint," and "hearing" as contained in the second clause of section 12–36–104(1)(b) thereof. As previously noted, an inquiry panel must conduct an investigation whenever a complaint is filed against a physician but may not begin such investigation until after the physician subject to the complaint has been given an opportunity to respond thereto. Therefore, for purposes of section 12–36–104(1)(b), the Board's subpoena power may not be exercised lawfully until an inquiry panel has commenced a disciplinary investigation. The court of appeals recognized this distinction in the following portion of its opinion:

[T]he [B]oard's authority under § 12–36–104(1)(b) to issue a subpoena "in connection with any investigation" has specific reference only to that investigation described in § 12–36–118(4). Hence, whatever authority the [B]oard may possess to conduct some investigation before initiating a complaint in writing, it is only after such a complaint is made, the subject of that complaint has been given notice of all matters complained of, and the complaint has been referred to an inquiry panel for investigation that the inquiry panel has the authority to issue an investigative subpoena.

*Duhon*, 867 P.2d at 24.

### C

Section 12–36–106 of the Act contains numerous provisions defining the practice of medicine and establishing exemptions from the general requirement that a person may practice medicine only after obtaining a license to do so. Section 12–36–106(2) provides that a person not exempt from the licensing requirements of the Act who practices medicine as defined thereby without possessing and filing a license to do so "shall be deemed to be practicing medicine without complying with the provisions of [the Act] and in violation thereof." § 12–36–106(2), 5B C.R.S. (1991). Section 12–36–132 of the Act contains the following pertinent provisions:

**Injunctive proceedings.** (1) The board may, in the name of the people of the state of Colorado, through the attorney general of the state of Colorado, apply for an injunction in any court of competent jurisdiction to enjoin any person from committing any act prohibited by the provisions of article 13, 30, 34, 36, 39, or 41 of this title.

(2) If it is established that the defendant has been or is committing an act prohibited by said articles, the court shall enter a decree perpetually enjoining said defendant from further committing said act.

. . . .

§ 12–36–132, 5B C.R.S. (1991).

The Board notes that section 12–36–118(4)(a) of the Act applies only to administrative proceedings concerning licensees. The Board then contends that if the term

"investigation" appearing in that clause of section 12–36–104(1)(b) of the Act granting subpoena power to the Board is confined to the investigation of licensees, the Board would have no authority to issue subpoenas in connection with investigations of persons not licensed to practice medicine. Whatever the merits of these observations concerning the potential effect of the statutory scheme adopted by the General Assembly, they do not support the Board's argument that such scheme should be ignored by construing section 12–36–104(1)(b) without reference to section 12–36–118.

The Board has no inherent authority to issue administrative subpoenas. Such authority is created by the General Assembly. Conversely, the statutory limitations of the Board's authority to issue administrative subpoenas do not restrict the Board's general investigative authority. The remedies established by the General Assembly in section 12–36–132 of the Act for enforcement of violations of section 12–36–106 thereof include the initiation of judicial equitable proceedings by the Board "in the name of the people of the state of Colorado, through the attorney general of the state of Colorado. . . ." § 12–36–132(1), 5B C.R.S. (1991). While such remedy is not exclusive, see § 12–36–132(3), 5B C.R.S. (1991), resort to that particular remedy would not necessarily implicate the Board's authority to issue administrative subpoenas.[8] In addition, the Board is not prohibited from issuing administrative subpoenas after charges have been referred to the attorney general but before the filing of any formal complaint. See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1491 (10th Cir.1991) ("As part of preparing a complaint pursuant to the Board's . . . referral, [the attorney general] necessarily had to investigate the incidents that would form the basis of that complaint."); Norton v. Colorado Bd. of Medical Exam'rs, 821 P.2d 897, 903–04

(Colo.App.1991) (as legal counsel for inquiry panel of Board, attorney general was authorized to conduct investigation after referral of disciplinary charges but before filing of formal complaint against physician).

### III

The Board asserts that the court of appeals improperly applied our decision in *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980), in reversing the trial court's order. We disagree.

In *Charnes,* we held that an administrative subpoena issued by the executive director of the Colorado Department of Revenue constituted a reasonable seizure if the investigation was for a lawful purpose, the requested information was relevant to the inquiry, and the subpoena was sufficiently specific to obtain documents which are adequate but not excessive to the inquiry. *Id.* at 101, 612 P.2d at 1122 (citing *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946)). The court of appeals expressly recognized the *Charnes* formula and then made the following pertinent observations:

> [W]ithout a copy of the written complaint made by the board and a clear exposition of the act or omission which, if found to have occurred, would constitute unprofessional conduct, it is impossible to determine whether the purpose to be served by the subpoena is one that may properly be pursued by it.

*Board of Medical Exam'rs v. Duhon,* 867 P.2d 20, 25 (Colo.App.1993). The court of appeals thus properly recognized that until the Board indicates with particularity what it deems to be appropriate for investigation and notifies the licensee of such determination, a court in all probability will be unable to evaluate the reasonableness of an administrative subpoena.[9]

---

8. Section 12–36–111 of the Act establishes the Board's authority to grant licenses for the practice of medicine and authorizes the Board "to make such independent investigation as it may deem advisable" in determining the eligibility of an applicant. § 12–36–111(1), 5B C.R.S. (1991). Our holding that the Board's subpoena authority is limited to the circumstances established by § 12–36–118 of the Act does not imply any con-

clusion by this court with respect to the extent of the Board's general investigative authority concerning the qualifications of applicants for licenses to practice medicine.

9. The Board suggests that private citizen complaints are rarely drafted with sufficient clarity to indicate the particular basis of the Board's jurisdiction or the need for utilization of the Board's

The Board also contends that the court of appeals erred in reversing the trial court's order in this case because the subpoena issued by the Board was reasonable in any event. While the subpoena was issued after Duhon responded to the complaint, the trial court expressly stated on the record that it did not consider the contents of the complaint or of the answer thereto in reaching its decision. Furthermore, the record does not disclose whether the matter was referred to an inquiry panel for investigation before or after receipt of Duhon's answer to the complaint. As the court of appeals concluded, in the absence of such evidence the trial court had no basis to determine whether the subpoena satisfied the *Charnes* criteria.

## IV

For the foregoing reasons, the judgment of the court of appeals is affirmed. The case is returned to that court with directions to remand the case to the trial court for further proceedings with respect to the Board's motion to enforce its subpoena and Duhon's motion to quash the subpoena consistent with the views set forth in this opinion.

MULLARKEY, J., dissents, and ROVIRA, C.J., and VOLLACK, J., join in the dissent.

### Justice MULLARKEY dissenting:

I respectfully dissent from the majority opinion refusing to enforce the Board of Medical Examiners' (the Board's) administrative subpoena. The subpoena sought records from a physician, S. Crawford Duhon, regarding his use of a device referred to as "INTERRO." I would find that, based on the documentary evidence in the record, the Board had authority under the statute to issue the subpoena in this case. I also disagree with the majority's holding that it is necessary to remand the case to the trial court in order to determine whether the subpoena constituted a reasonable seizure under

our decision in *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980). I would find that the subpoena is enforceable against Duhon.

Section 12–36–104, entitled "Powers and duties of board," allows the Board to issue subpoenas that are enforceable by the district court only "in connection with any investigation (whether before or after a formal complaint is filed pursuant to section 12–36–118) or hearing." § 12–36–104(1)(b) (parenthetical material in original). Section 12–36–118 prescribes the disciplinary procedures to be followed by the Board. Thus, the plain language of the statute links the authority to issue subpoenas under section 12–36–104 to investigations performed in conjunction with the disciplinary functions of the board under section 12–36–118 and expressly permits an administrative subpoena to be issued *before or after* a formal complaint is filed.

Under section 12–36–118, an informal process precedes filing of a formal complaint. This informal process is triggered when the Board or an outside individual initiates a written complaint, section 12–36–118(4)(a), or when the Board has been notified that disciplinary actions have been taken against a physician by a hospital or pursuant to professional review; when a medical malpractice judgment or settlement has been entered against a physician; or when a physician has resigned from a hospital for medical misconduct. § 12–36–118(4)(b)(I) to –(IV).

Once a written complaint has been filed, the Board is required to notify the physician of the complaint by certified mail and then to assign the case to an inquiry panel for "investigation" after the physician has had twenty days to respond. § 12–36–118(4)(a).[10] When this investigation is complete, the Board determines whether a formal complaint should be filed. § 12–36–118(4)(c).

---

subpoena power. However, § 12–36–118(4)(a) does not provide that a citizen's complaint, as filed, shall constitute the required notice. The Board may, if necessary, incorporate the allegations of a citizen's complaint in a document drafted to ensure that the nature of the conduct complained of is stated with sufficient particularity.

**10.** Contrary to the majority's interpretation, I do not read the statute to require a response by the physician before the Board may initiate an investigation pursuant to § 12–36–118(4)(b). *See* maj. op. at ——.

The case before us has not proceeded beyond the informal stage because Duhon challenged the Board's subpoena before a determination to file a formal complaint was made. The record reveals that the Board's subpoena was issued in full compliance with the procedures prescribed by section 12–36–118(4)(a) for investigation prior to the filing of a formal complaint. The Board initiated a written complaint against Duhon based on his use of the INTERRO device. Duhon received notification of the Board-initiated complaint on July 26, 1990, he responded to the complaint in a letter dated October 1, 1990, and the Board's subpoena was issued on November 14, 1991. The Board was thus authorized to issue the subpoena pursuant to section 12–36–104.

Because I would find that the Board had statutory authority to issue the subpoena under the facts of this case, I would decline to address whether the Board has either statutory or inherent authority to issue subpoenas at any other time and I express no opinion concerning the majority's identification of other circumstances in which the Board is authorized to issue subpoenas.

In addition to asserting that the Board's subpoena was unauthorized under section 12–36–104(a)(1), Duhon also contends that the subpoena constituted an unreasonable seizure contrary to the Fourth Amendment of the United States Constitution. The court of appeals found that it could not rule on this issue "without a copy of the written complaint" and remanded to the trial court. The majority affirms the court of appeals ruling. I disagree with the majority that remand is necessary to decide this issue.[11]

An appellate court is as competent as a trial court to review documentary evidence and to apply the law thereto. *Colorado River Water Conservation Dist. v. Municipal Subdistrict*, 198 Colo. 352, 355, 610 P.2d 81, 83 (1979). In this case, the notice sent to Duhon *is* the written complaint and both the subpoena issued by the Board and the complaint received by Duhon are part of the record.[12] This documentary evidence clearly demonstrates that the subpoena met the *Charnes* requirements.

In *Charnes*, we adopted the test set out by the Supreme Court to determine when an administrative agency's subpoena of records is a reasonable seizure for Fourth Amendment purposes. We held that:

an administrative agency's seizure of records is a reasonable seizure if (1) the investigation is for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents which are adequate but not excessive for the inquiry.

612 P.2d 1117, 1122 (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946)).

Under section 12–36–118(5), the Board is authorized to discipline physicians for unprofessional conduct. As relevant here, "unprofessional conduct" is defined as:

An act or omission constituting grossly negligent medical practice or two or more acts or omissions which fail to meet generally accepted standards of medical practice, whether the two or more acts or omissions occur during a single treatment

---

**11.** The majority remands the case for determination of whether the Board referred the case to an inquiry panel prior to issuing the subpoena as required under section 12–36–118(4)(a) and whether the subpoena satisfied the *Charnes* criteria based on the contents of the complaint. Maj. op. at ——. Absent any evidence to the contrary, agencies are presumed to have regularly pursued their authority. *People v. Gallegos*, 692 P.2d 1074, 1078 (Colo.1984). With respect to the Board's compliance with subsection (4)(a), Duhon has not rebutted this presumption by introducing any evidence that the Board failed to refer his case to an inquiry panel. Accordingly, Duhon did not raise a material issue of fact for determination by the trial court on this question.

**12.** As the Board points, out the notice and the written complaint in this case are one and the same. Section 12–36–118(4)(a) does not require that the written complaint and the notice of the complaint be two separate documents. If the complaint had come from a third party, two documents would have been produced: the written complaint filed with the Board and the Board's notice forwarding the complaint to the physician. In this case, the complaint was Board-initiated, so a written complaint separate from the notice was not necessary.

of one patient, during the course of treatment of one patient, or during the treatment of more than one patient.

§ 12–36–117(1)(p). In this case, the notice of complaint supplied to Duhon specified that Duhon's use of the INTERRO device was under investigation because "use of the IN-TERRO as a diagnostic device without confirmation of test results by another, medically established product or procedure constitutes substandard care and subjects the license holder to disciplinary action." Therefore, a subpoena was issued for a "lawfully authorized purpose" because it sought information concerning whether Duhon's methods of diagnosing and treating patients met these generally accepted standards of medical practice.

Furthermore, the information requested by the subpoena was relevant to this inquiry. The subpoena requested:

The complete office records for all patients in which the INTERRO device was used as a diagnostic tool by Dr. S. Crawford Duhon, MD, for the time frame of January 1, 1991 through November 13, 1991.

Patient files are relevant to determining whether a physician's methods meet generally accepted standards because they document those procedures and methods utilized by the physician.

I would find that the subpoena also was sufficiently specific to meet the final prong of the test. In order to assess the use of the INTERRO device by Duhon, the Board needed documentation concerning its use. The subpoena did not ask for all of Duhon's files, nor did it ask for the files of all patients for which he had utilized the device. Instead, it targeted only documents concerning recent use of the INTERRO device. It is difficult to imagine how the documents requested in the subpoena could be more closely tailored to the scope of the inquiry.

Under this analysis, I would reverse the judgment of the court of appeals and affirm the district court order enforcing the Board's subpoena.

ROVIRA, C.J., and VOLLACK, J., join in the dissent.