**COLORADO STATE BOARD OF MEDICAL EXAMINERS,**
Appellee,

v.

**Imran U. KHAN, M.D., Respondent–Appellant.**

**No. 98CA0793.**

Colorado Court of Appeals,
Div. III.

July 8, 1999.

Gale A. Norton, Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Matthew E. Norwood, First Assistant Attorney General, Regulatory Law Section, Denver, Colorado, for Appellee.

Yu, Stromberg, Cleveland, P.C., Frederick Y. Yu, Gregory C. Parham, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge STERNBERG.[*]

Respondent, Imran U. Khan, appeals the revocation of his license to practice medicine by the Colorado State Board of Medical Examiners (Board). We affirm.

This case involves a physician discipline action arising under the Colorado Medical Practice Act, § 12–36–101, et seq., C.R.S. 1998(MPA).

In March 1995, an insurance company filed a written, informal complaint against respondent with the Board. Although this complaint concerned one patient, the Board's inquiry panel widened the scope of its investigation and issued subpoenas between January and September 1996. As a result of the investigation, charges were filed leading to the summary suspension of respondent's license on October 21, 1996.

An inquiry panel filed a formal complaint against respondent on November 26, 1996, and an amended complaint on February 7, 1997, relating to treatment of 27 patients and a total of 32 cases. Information serving as the basis of the complaints had been obtained through subpoenas. Respondent was charged with three counts of unprofessional conduct: (1) gross negligence of medical practice; (2) willful and repeated ordering or performance of demonstrably unnecessary tests, studies and treatment, without clinical

---

[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.

justification; and (3) falsification of information or repeated entry of incorrect essential information or repeated failure to make essential entries on patient records.

Respondent filed two prehearing motions: a motion to dismiss portions of the formal complaint and a motion to dismiss two counts of the formal complaint. The Administrative Law Judge (ALJ) denied both motions.

Following a hearing held over ten days in the spring of 1997, the ALJ, on November 20, 1997, entered exhaustive findings of fact and conclusions of law. Her recommendation was that respondent's license be revoked. On March 12, 1998, the Board issued its final order adopting the ALJ's initial decision and revoking respondent's license. This appeal followed.

## I.

Respondent bases two of his arguments on the ALJ's denial of his preliminary motion to dismiss portions of the amended formal complaint. This motion was based on the widened investigation by the Board's inquiry panel.

It is undisputed that during its initial investigation of respondent, pursuant to the written informal complaint, the inquiry panel expanded the scope of its investigation. The panel issued subpoenas to several third parties, including St. Mary–Corwin Hospital (SMC), prior to initiating the informal complaint procedures.

We note that the panel provided respondent with the informal notice and opportunity to respond required by § 12–36–118(4)(a)(I), C.R.S.1998. Respondent received the 30-day notice required and his response was considered by the inquiry panel. Therefore, because respondent had informal notice and the opportunity to respond, the sole issue here is the panel's statutory authority to issue subpoenas prior to initiating an informal complaint against respondent.

## A.

■ Respondent contends that the ALJ committed reversible error by ruling that the inquiry panel did not exceed the authority granted to it by the MPA by issuing the third party subpoenas. This contention is based upon *Board of Medical Examiners v. Duhon,* 895 P.2d 143 (1995), in which the supreme court held that, under the then existing statutory language in the MPA, the Board lacked authority to issue administrative subpoenas until a formal complaint had been filed. We perceive no error in the ALJ's ruling.

Specifically, respondent asserts that the MPA requires an inquiry panel to initiate an informal written complaint before it may investigate a physician. He argues that, because no informal written complaint had been initiated against him, the panel's use of information obtained by the subpoenas, as a basis of the charges against him, violated his due process rights and the case against him must be dismissed.

The ALJ's ruling answers the respondent's contentions. It states in pertinent part:

At the time *Duhon* was decided (May 1995), Section 12–36–118 of the MPA provided, in pertinent part, as follows:

(4)(a) Complaints in writing relating to the conduct of any physician ... may be made by any person or may be initiated by the board on its own motion. The physician *complained of shall be given notice by cer- tified mail of the nature of all matters complained of and shall be given twenty days to make explanation or answer thereto.* Upon receipt of the physician's answer or at the conclusion of the twenty days if no answer has been received, the matter shall be referred to one panel acting as an inquiry panel for that particular case ... for investigation.

[See Colo. Sess. Laws 1995, ch. 218, § 12–36–118 at 1063]

Based on this language, *Duhon* held that *no investigation was proper until after a physician had the opportunity to respond* to the Board's informal notice of complaint. The Court held that the Board's statutory authority to investigate complaints was triggered by the expiration of this informal complaint period and subsequent referral of the case to an inquiry panel for investigation.

Effective July 1, 1995, after the *Duhon* case was decided and before any of the subpoenas in this case were issued, Section 12–36–118(4)(a) of the MPA was amended ... to read, in pertinent part, as follows: (I) Written complaints relating to the conduct of a physician ... may be made by any person or may be initiated by an inquiry panel of the board on its own motion. The physician complained of shall be given notice by certified mail of the nature of the complaint and shall be given thirty days to answer or explain in writing the matter described in such complaint. Upon receipt of the physician's answer or at the conclusion of thirty days, whichever occurs first, the inquiry panel may take further action as set forth in subparagraph (II) of this paragraph (a).

(II) The inquiry panel may then conduct a further investigation....

[*See* § 12–36–118(4)(a), C.R.S.1998]

The parties dispute the import of these amendments. Respondent asserts the amendments have no impact on the holding in *Duhon,* while the Panel asserts *Duhon* has no application to the MPA as currently worded.

There are substantial differences in the two versions of the MPA. Under the statute as it existed at the time *Duhon* was decided, complaints could only be 'referred to an inquiry panel ... for investigation' *after* the informal notice period had expired. *Duhon* relied on this language in the former version to reach the conclusion that no investigation of a complaint could begin (and thus no subpoenas could be issued) prior to expiration of the informal response period and consequent referral to an inquiry panel.

In contrast, the current version contains no similar temporal scheme and no limitations on when matters may be referred to an inquiry panel. In addition, Section 12–36–118(4)(a)(I) of the current statute provides that the inquiry panel may take 'further' action following the physician's response time. This provision indicates both that the inquiry panel may take action *before* the response time has elapsed and that cases may be referred to an inquiry

panel as soon as they are received by the Board, without waiting until the response time has expired. Thus, in contrast to controlling statutory provisions when *Duhon* was decided, under the current version of the statute complaints may now be referred directly to an inquiry panel for action before the notice process begins.

Furthermore, the statute no longer contains any explicit statutory limitation (which limitation was relied on heavily in *Duhon*) against commencement of an investigation prior to the expiration of the informal notice period. In addition, Section 12–36–118(4)(a)(II) of the current statute contains a reference to the inquiry panel conducting '*further* investigation' following receipt of the physician's response. This language clearly implies that some investigation by the panel is permissible prior to receipt of such a response. Moreover, there is nothing in the current version which would indicate that the permissible scope of this pre-response investigation excludes issuance of subpoenas.

Respondent argues that the 1995 amendments to Section 12–36–118(4)(a) ... do not broaden the scope of the subpoena or investigative authority of the Board and do not affect or dilute the holding of *Duhon.* He asserts instead that the principal change to the section was to afford respondent physicians 30 days (rather than the prior 20 days) within which to respond to the informal complaint stage and that no alteration was made in the temporal limitations on commencing an investigation previously found in the statute. The Administrative Law Judge disagrees.

If, as Respondent argues, the General Assembly had intended only to alter the number of days within which a physician could respond to an informal complaint, it could easily have done so without making all the additional alterations in statutory language that were encompassed in the 1995 amendments. Generally, a presumption exists that when a statute is amended there is an intent to change the law unless the law is amended to clarify an ambiguity. *[Colorado] Division of Employment [ & Training] v. Parkview Episcopal Hospital,* 725

P.2d 787 (Colo.1986); *Rickstrew v. People*, 822 P.2d 505 (Colo.1991). *Duhon*, which was decided before the amendment went into effect, was quite clear as to the meaning of the existing provisions of Section 12–36–118(4). Thus, there was no reason to amend that section merely for clarification purposes. Accordingly, the presumption that the changes to Section 118(4) were intended to effectuate a change in the existing law should operate here.

We adopt this analysis and interpretation as our own. Therefore, because we interpret § 12–36–118(4)(a)(I) as amended to allow an inquiry panel to commence an investigation of a physician prior to the initiation of the informal complaint procedure against him, we perceive no error.

Based on our conclusion, it is unnecessary to address the issues of respondent's standing to challenge the issuance of the subpoenas and the exclusionary rule, as related to the ALJ's ruling on the subpoenas.

### B.

■ Respondent also asserts that the ALJ erred by ruling that the Board's inquiry panel did not violate § 12–36.5–104, C.R.S.1998, when it subpoenaed SMC's peer review records of respondent. Respondent contends that the peer review records are confidential and that the MPA prevents the Board from investigating these matters unless a final disciplinary action has been taken by the hospital's governing board. We do not agree.

In May 1996, the inquiry panel subpoenaed all of SMC's professional review records from its peer review of respondent. SMC had not taken any adverse action against respondent during or as a result of this review.

Section 12–36.5–104(13), C.R.S.1998, renders confidential all proceedings, recommendations, records, and reports regarding a physician's professional conduct. However, § 12–36.5–104(11), C.R.S.1998, explicitly provides the Board with authority under the professional review act to request and receive complete records of physician review proceedings from a hospital. Thus, we perceive no error in the Board's actions in this regard.

### II.

Respondent's remaining two assertions stem from the ALJ's denial of his preliminary motion to dismiss counts II and III of the amended formal complaint for failure to state a claim.

Count II of the Board's amended formal complaint alleged that, "respondent has willfully and repeatedly ordered or performed, without clinical justification, demonstrably unnecessary tests, studies, and treatment, in violation of § 12–36–117(1)(bb)(I), C.R.S."

Count III charged respondent with falsifying or repeatedly failing to make essential entries on patient records in violation of § 12–36–117(1)(cc), which provides that falsifying or repeatedly making incorrect essential entries or repeatedly failing to make essential entries on patient records constitutes unprofessional conduct.

### A.

■ Respondent asserts that the Board violated the MPA because it did not use independent standards to determine whether respondent committed acts of unprofessional conduct alleged in count II, pursuant to § 12–36–117(1)(bb)(I), C.R.S.1998. We disagree.

Section 12–36–117(1)(bb)(I) prohibits physicians from engaging in the following practices:

Willful and repeated ordering or performance, without clinical justification, of demonstrably unnecessary laboratory tests or studies; the administration, without clinical justification, of treatment which is demonstrably unnecessary; the failure to obtain consultations or perform referrals when failing to do so *is not consistent with the standard of care for the profession;* or ordering or performing, without clinical justification, any service, x-ray, or treatment which *is contrary to recognized standards of the practice of medicine* as interpreted by the board. (emphasis supplied)

Section 12–36–117(I)(bb)(II), C.R.S.1998, provides that the board shall use standards developed by recognized and established accreditation or review organizations to determine whether medical practices are "not consistent with the standard of care or are contrary to recognized standards of the practice of medicine."

The ALJ ruled that:

Because the independent standards requirement of Section 12–36–117(1)(bb)(II) applies only to the portions of Section 12–36–117(1)(bb)(I) which have not been charged in the Formal Complaint, that requirement has no applicability to this proceeding. Consequently, Respondent's motion to dismiss, which relies on the Board's alleged failure to comply with such requirement, is denied.

We agree with the ALJ's analysis and, thus, find no error in the denial of the motion to dismiss.

### B.

■ We also are not persuaded by respondent's contention that counts II and III in the amended formal complaint should have been dismissed because the Board did not plead or prove that respondent engaged in the prohibited conduct for the purpose of insurance fraud. We disagree.

Noting that the legislative history of §§ 12–36–117(1)(bb) & (cc) reveals that these sections were added under a comprehensive House bill endorsed by the Colorado Commission of Insurance, respondent argues that the bill's purpose was to combat insurance fraud and, thus, asserts that a showing of a physician's intent to defraud is a necessary element of the proscribed conduct in these sections.

The formal complaint contained no allegations that respondent acted with the intent to commit insurance fraud. However, §§ 12–36–117(1)(bb) & (cc) should be construed according to their plain meaning. We agree with the ALJ that neither section requires proof of fraudulent intent. Because the statutory wording is clear and unambiguous, no further examination of the legislative intent

is required. *See Watson v. Vouga Reservoir Ass'n,* 969 P.2d 815 (Colo.App.1998).

The Board's adoption of the ALJ's order and revocation of respondent's medical license is affirmed.

Judge MARQUEZ and Judge CASEBOLT concur.