The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

**2018COA41**

**No. 17CA0073, Colo. Med. Bd. v. McLaughlin — Administrative Law — State Administrative Procedure Act — Colorado Sunshine Act — Open Meetings Law — Professions and Occupations — Colorado Medical Board — Disciplinary Procedures — Subpoenas**

In this subpoena enforcement action, a division of the court of appeals considers whether a subpoena issued by the Colorado Medical Board (Board) in relation to an investigation of a physician's medical marijuana recommendations had a lawful purpose. The majority concludes that the subpoena was issued solely as a result of a physician referral policy promulgated in violation of the Open Meetings Law and the State Administrative Procedure Act. Because the Board had no basis for investigating the physician apart from the invalid physician referral policy, the

subpoena had no lawful purpose.  Accordingly, the majority reverses the district court's judgment enforcing the subpoena.

The dissent agrees with the majority in *Colorado Medical Board v. Boland*, 2018 COA 39, ___ P.3d ___, also announced today. Thus, the dissent would affirm the district court's judgment enforcing the subpoena because, regardless of the lawfulness of the physician referral policy, the subpoena was issued pursuant to an investigation within the scope of the Board's authority.

COLORADO COURT OF APPEALS     **2018COA41**

Court of Appeals No. 17CA0073
City and County of Denver District Court No. 16CV33460
Honorable Jay S. Grant, Judge

Colorado Medical Board,

Petitioner-Appellee,

v.

Scott Storm McLaughlin, M.D.,

Respondent-Appellant.

JUDGMENT REVERSED

Division I
Opinion by JUDGE TAUBMAN
Harris, J., concurs
Booras, J., dissents

Announced March 22, 2018

Cynthia H. Coffman, Attorney General, Russell B. Klein, Assistant Attorney
General, Eric Maxfield, Assistant Attorney General, Sierra R. Ward, Assistant
Attorney General, Denver, Colorado, for Petitioner-Appellee

Hershey Decker, PLLC, Carmen N. Decker, Lone Tree, Colorado, for
Respondent-Appellant

¶ 1     In this subpoena enforcement action, respondent, Dr. Scott Storm McLaughlin, appeals the district court's judgment enforcing a subpoena issued by plaintiff, the Colorado Medical Board (Board). The Board's subpoena sought the medical records of patients for whom Dr. McLaughlin had recommended the use of medical marijuana.[1]  On appeal, Dr. McLaughlin contends that the subpoena was not issued for a lawful purpose because the policy prompting the Board's investigation was adopted in violation of Colorado's Open Meetings Law, the State Administrative Procedure Act (APA), and the Colorado and United States Constitutions.  We agree with Dr. McLaughlin that the subpoena did not have a lawful purpose, and therefore we reverse the district court's judgment.

¶ 2     At the outset, we recognize that another divided division of this court is announcing today *Colorado Medical Board v. Boland*, 2018

---

[1] Under the Colorado Constitution, a physician can provide "written documentation" stating that a patient has a "debilitating medical condition and might benefit from the medical use of marijuana." Colo. Const. art. XVIII, § 14(2)(c)(II); *see also* § 25-1.5-106(2.5)(d)(II), C.R.S. 2017.  Thus, a physician can recommend the use of medical marijuana and certify that a patient has a debilitating condition as defined by statute.  § 25-1.5-106(5)(b), (c).  However, a physician cannot "prescribe" marijuana.  *Beinor v. Indus. Claim Appeals Office*, 262 P.3d 970, 973 (Colo. App. 2011).

1

COA 39, ___ P.3d ___, affirming the judgment of the district court enforcing a subpoena issued on the basis of the same challenged policy. In *Boland*, the division assumes that the policy is invalid, but nevertheless concludes that the subpoena there had a lawful purpose. For the reasons stated herein, we disagree with that analysis.

## I. Background

### A. The Subpoena

¶ 3     Dr. McLaughlin, a physician licensed to practice in Colorado since 1985, received a subpoena duces tecum from the Board in June 2015. The subpoena ordered him to produce medical records for specific patients examined on ten dates ranging from August 2014 through January 2015.[2]

¶ 4     Dr. McLaughlin asserts, and the Board does not dispute, that the subpoena was issued by the Board after it had received a complaint from the Colorado Department of Public Health and Environment (CDPHE) related to Dr. McLaughlin's medical marijuana recommendations. In fact, along with the subpoena, Dr.

---

[2] As Dr. McLaughlin notes, the Board issued a second subpoena requesting the same information in July 2016.

McLaughlin was sent a copy of CDPHE's original complaint. The complaint referenced a policy that dictated that CDPHE would refer physicians on the basis of any of three enumerated criteria: (1) a specified number of medical marijuana recommendations per year; (2) recommendations of an increased plant or ounce count for a specified percentage of patients; or (3) a specified percentage of patients under the age of thirty.[3]

¶ 5    Dr. McLaughlin objected to the Board's subpoena, arguing that CDPHE's referral policy was invalidly adopted. On that basis, he refused to produce the subpoenaed records.

¶ 6    In September 2016, the Board filed an application for an order enforcing the subpoena, citing section 12-36-104, C.R.S. 2017. In January 2017, the district court granted the Board's application and ordered Dr. McLaughlin to produce the subpoenaed records. The district court concluded that, although the physician referral policy was invalid, "the subsequent investigation and the subpoena [we]re for a lawfully authorized purpose — the *duty* to investigate

---

[3] We note that CDPHE's complaint referring Dr. McLaughlin was not included in the record. However, the Board does not dispute that Dr. McLaughlin received the complaint, or that it described the physician referral policy as outlined here.

3

licensed physicians who may fail to meet generally accepted standards of medical practice." The district court subsequently stayed enforcement of the order pending this appeal.

## B. The Physician Referral Policy

¶ 7　　As a result of a Colorado Open Records Act request filed with CDPHE, the Board, and the Department of Regulatory Agencies (DORA)[4] in connection with related litigation, Dr. McLaughlin obtained public records concerning the drafting of the physician referral policy. The record on appeal in this case includes correspondence provided by these agencies in response to the Open Records Act request.

¶ 8　　Specifically, the Board produced internal communications detailing the policy's evolution and adoption. The correspondence revealed that CDPHE officials and Board members began discussing the referral policy in the fall of 2013. A July 2014 email from the

---

[4] The Board is housed within DORA. § 24-1-122(3)(m)(I), C.R.S. 2017. DORA administers the Board through "budgeting, purchasing, planning, and related management functions." § 24-1-105(1), C.R.S. 2017. However, the Board independently exercises its "prescribed statutory powers, duties, and functions, including rule-making, regulation, licensing, and registration, [and] the promulgation of rules, rates, regulations, and standards." *Id.*

4

Board's program director stated that she "had a t/c with [the director of the medical marijuana registry] in January 2014 and met in person with him in April 2014 re: parameters for reporting." An August 2014 email also from the Board's program director detailed how, after a 2013 state audit, "CDPHE reached out to [the Board] requesting assistance in developing reporting parameters" for physicians who made medical marijuana recommendations. The email read, "After a period of extended silence from CDPHE, [the Board and Office of Investigators (OI)] took a leadership role and frequently circled back with CDPHE to promote progression of the project. CDPHE subsequently adopted an internal policy based on the criteria identified and/or defined by the CDPHE/[Board]/OI workgroup."

¶ 9 A December 2014 email from the Medical Marijuana Program's manager stated, "[W]e are in the process of updating our referral policy with DORA. I have been meeting with DORA and internal leadership on this topic and we are still working out the details." Another email from that same date from CDPHE's director similarly detailed that the agencies were "in the process" of developing the

referral policy and acknowledged, "[I]t's misleading to state that we do not have a policy, as one is under development."

¶ 10   CDPHE officially implemented the physician referral policy on May 15, 2014. The policy, titled "Medical Marijuana Policy Number 2014-01" (Policy 2014-01), stated that CDPHE would refer physicians to the Board for investigation on the basis of any of the following: (1) 3521 or more recommendations for medical marijuana per year; (2) recommendations for an increased marijuana plant or ounce count for more than thirty percent of patients, or a particularly high recommendation for any individual patient; or (3) a caseload in which over one-third of patients were under the age of thirty.

¶ 11   Dr. McLaughlin alleges, and the Board does not dispute, that the policy was not available to the public until April 2015, nearly a year after its implementation, and that no public meeting was ever held regarding the adoption of Policy 2014-01.

## C.  Related Litigation

¶ 12   In addition to the instant case, several other pending actions have challenged the validity of Policy 2014-01. Six other subpoena enforcement actions have been filed against individual physicians

who were referred to the Board based on Policy 2014-01. Five of these enforcement actions have been stayed pending this appeal. The sixth subpoena enforcement action has been appealed to this court. As noted, another division of this court decides that case today. *Boland* , 2018 COA 39, ___ P.3d ___.

¶ 13 Dr. McLaughlin and eight other physicians directly challenged the validity of the policy in yet another action. In that case, the district court dismissed the relevant claims against the Board, stating that Policy 2014-01 had been developed by CDPHE and thus, "[i]f this policy was in fact unlawfully adopted and is ultimately declared void, any injunctive relief would necessarily be aimed at CDPHE to prohibit it from referring cases to [the Board] under the void policy."

¶ 14 The district court later ruled that Policy 2014-01 was void. Specifically, the district court found that the "policy was the product of about a dozen meetings and about a dozen phone calls between staff members with [CDPHE] and staff at the Board" and "was adopted and implemented without providing public notice." Order at 7-8, *John Does v. Colo. Dep't of Pub. Health & Env't,* No. 15CV30902 (City & Cty. of Denver Dist. Ct. Oct. 4, 2016). Because

the district court concluded the policy had been adopted in violation of the Open Meetings Law, it enjoined CDPHE from referring physicians to the Board under the policy. That decision is also the subject of an appeal to this court. *See John Does v. Colo. Dep't of Pub. Health & Env't*, No. 16CA2011 (Colo. App. filed Nov. 22, 2016).

## D. CDPHE and the Board

¶ 15 Pursuant to an executive order signed by Colorado's governor, CDPHE is the health agency designated to manage Colorado's medical marijuana program. *See* § 25-1.5-106(2)(f), C.R.S. 2017. *See generally* § 25-1.5-106. CDPHE is required to promulgate rules governing certain aspects of the medical marijuana program. *See* § 25-1.5-106(3)(a) (CDPHE "shall . . . promulgate rules of administration"); *see also* Colo. Const. art. XVIII, § 14(9) (stating that the state health agency "shall also enact rules of administration").

¶ 16 For example, CDPHE must promulgate rules to establish a confidential registry of patients who are entitled to receive a medical marijuana identification card. § 25-1.5-106(3)(a)(I). CDPHE is also required to promulgate rules concerning the conditions for issuing registry identification cards to patients, which entails creating

8

"standards for ensuring that [CDPHE] issues a registry identification card to a patient only if he or she has a bona fide physician-patient relationship with a physician in good standing." § 25-1.5-106(3)(a)(V). If CDPHE "has reasonable cause to believe" that a physician violated rules promulgated pursuant to its rulemaking authority, it can refer the matter to the Board for "an investigation and determination." § 25-1.5-106(6)(a).[5]

¶ 17    The Board is a body created by the Medical Practice Act. § 12-36-103(1)(a)(I), C.R.S. 2017. The Board is tasked with investigating allegations of "unprofessional conduct." § 12-36-117, C.R.S. 2017. It is authorized by statute to "[m]ake investigations, hold hearings, and take evidence." § 12-36-104(1)(b)(I); *see also* § 12-36-118, C.R.S. 2017 (describing the structure of the Board's inquiry and hearing panels and the process for initiating a complaint against a

---

[5] Additionally, CDPHE can refer a physician to the Board if it has reasonable cause to believe he or she has violated section 14 of article XVIII of the Colorado Constitution, or subsections (a) through (c) of section 25-1.5-106(5), which list various requirements for physicians who recommend medical marijuana to patients. Dr. McLaughlin contends, and the Board does not dispute, that CDPHE's referral in this case was based solely on the criteria listed in Policy 2014-01, not on a suspected violation of the Colorado Constitution or of subsection 25-1.5-106(5)(a)-(c).

9

physician).  In the exercise of its investigatory function, the Board has the power to issue subpoenas to compel production of "materials in any hearing, investigation, accusation, or other matter coming before [it]."  § 12-36-104(1)(b)(II).

¶ 18    The Board is also permitted to make rules as it "may deem necessary or proper to carry out the provisions and purposes" of the Medical Practice Act.  § 12-36-104(1)(a).

## II.  Analysis

¶ 19    As relevant here, Dr. McLaughlin contends that Policy 2014-01 was adopted in violation of Colorado's Open Meetings Law and the APA.  As a result, he argues, the Board's subpoena was not issued for a lawful purpose because the subpoena arose from CDPHE's referral, which was based solely on the illegally adopted policy.  We agree.

### A.  Standard of Review

¶ 20    Statutory interpretation presents a question of law that we review de novo.  *Wisdom Works Counseling Servs., P.C. v. Colo. Dep't of Corr.*, 2015 COA 118, ¶¶ 11-12, 360 P.3d 262, 265.

## B. The Validity of Policy 2014-01

¶ 21 Under Colorado's Open Meetings Law, "the formation of public policy is public business and may not be conducted in secret." § 24-6-401, C.R.S. 2017. Thus, "[a]ll meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken" must be open to the public at all times. § 24-6-402(2)(a), C.R.S. 2017. Further, any meeting at which a proposed policy is adopted may be held only after "full and timely notice to the public." § 24-6-402(2)(c). A "state public body" includes any board or "formally constituted body of any state agency." § 24-6-402(1)(d)(I).

¶ 22 "No resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a meeting" open to the public pursuant to section 24-6-402(2). § 24-6-402(8). In short, a formal action taken at a meeting that does not comport with the Open Meetings Law is "null and void." *Van Alstyne v. Hous. Auth.*, 985 P.2d 97, 100-01 (Colo. App. 1999); *see also Wisdom Works*, ¶ 25, 360 P.3d at 267.

¶ 23 Dr. McLaughlin asserts that Policy 2014-01 was promulgated in violation of the Open Meetings Law. The Board does not

11

expressly dispute that the policy was promulgated in violation of the Open Meetings Law, but rather asserts that the "taint, if any, would be on CDPHE's conduct" because "the policy is CDPHE's and not the Board's." We agree with Dr. McLaughlin that Policy 2014-01 was adopted in violation of the Open Meetings Law and further conclude that the Board, through its staff, participated in the improper promulgation of the policy.

¶ 24 The purpose of the Open Meetings Law is to allow interested members of the public to comment on public business. *See Benson v. McCormick,* 195 Colo. 381, 383, 578 P.2d 651, 653 (1978) (stating that the Open Meetings Law reflects the judgment that "democratic government best serves the [state] if its decisional processes are open to public scrutiny"). Here, physicians and other stakeholders did not have an opportunity to weigh in on Policy 2014-01. Instead, CDPHE and Board officials drafted the policy over the course of multiple meetings held behind closed doors and without notice to the public. We therefore conclude that Policy 2014-01 is invalid. *See* § 24-6-402(8).

¶ 25 We reach a similar conclusion under the APA. An agency that is statutorily permitted to make rules must follow procedures to

give public notice and allow for public comment under the APA. § 24-4-103, C.R.S. 2017. A "rule" is defined by the APA as a "statement of general applicability and future effect implementing, interpreting, or declaring law or policy or setting forth the procedure or practice requirements of any agency." § 24-4-102(15), C.R.S. 2017. The definition of "rule" includes a "regulation." *Id.* "'[S]ubstantial compliance' with the rule-making procedures established in § 24-4-103 is required, and an agency's failure to meet that standard renders a rule invalid." *Studor, Inc. v. Examining Bd. of Plumbers of Div. of Registrations*, 929 P.2d 46, 48 (Colo. App. 1996) (quoting § 24-4-103(8.2)(a)).

¶ 26    While the Board has statutory authority to "[a]dopt and promulgate" rules, it is required to follow the provisions of the APA in doing so. § 12-36-104(1)(a). Similarly, CDPHE, as an agency under the APA, is bound to follow notice and comment rulemaking procedures. *See* § 25-1.5-106(3). Here, there was no compliance

with the procedural notice and comment requirements, and thus the rule is also invalid under the APA.[6]

¶ 27     Our conclusion in no way signifies that CDPHE and the Board could not promulgate a policy concerning the criteria for referring a physician to the Board for suspected misconduct under the medical marijuana program.  Indeed, it is possible that CDPHE and the Board might have arrived at the same policy even after taking into account public comment.  Nevertheless, the Board must comply with the statutory procedures before it may adopt a physician referral policy concerning medical marijuana recommendations by physicians.  We conclude that because of the procedural deficiencies, Policy 2014-01 is void.

## C.  The Validity of the Subpoena

¶ 28     An administrative subpoena is valid if (1) the subpoena and investigation are for a lawfully authorized purpose; (2) the

---

[6] Dr. McLaughlin also asserts that Policy 2014-01 violated article XVIII, section 14(2)(c) of the Colorado Constitution and the First Amendment of the United States Constitution.  Because we conclude that the policy is invalid under Colorado statutes, we need not reach these arguments. *City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo. 2006) ("Where possible, we avoid a constitutional analysis in favor of a statutory resolution.").

information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents that are adequate but not excessive for the inquiry. *Charnes v. DiGiacomo*, 200 Colo. 94, 101, 612 P.2d 1117, 1122 (1980). An issuing agency has the burden of demonstrating the propriety of an issued subpoena. *Colo. State Bd. of Accountancy v. Arthur Andersen LLP*, 116 P.3d 1245, 1248 (Colo. App. 2005). "If the agency fails to demonstrate that the subpoena issued is for an authorized purpose, the court must refuse to enforce it." *Id.*

¶ 29     Dr. McLaughlin limits his appeal to the first prong of the *Charnes* test — whether the investigation and subpoena had a lawful purpose. He contends that, because the referral from CDPHE was based only on the unlawfully adopted Policy 2014-01, the subpoena issued by the Board as a result of CDPHE's referral had no lawful purpose. In contrast, the Board contends that, even if Policy 2014-01 were invalid, it nevertheless had the authority to issue the subpoena for the purpose of investigating whether Dr. McLaughlin had engaged in unprofessional conduct. Indeed, the district court adopted the Board's argument in enforcing the

subpoena. However, we agree with Dr. McLaughlin that the subpoena was not issued for a lawful purpose.

¶ 30     Despite its expansive powers under the Medical Practices Act, the Board's investigatory authority is circumscribed by statute. In *Board of Medical Examiners v. Duhon*, the supreme court concluded that a subpoena issued to investigate a physician's allegedly unprofessional conduct was invalid because the Board had failed to comply with procedural requirements concerning the timing of its investigation. 895 P.2d 143, 147, 149 (Colo. 1995); *see also Colo. State Bd. of Med. Exam'rs v. Khan*, 984 P.2d 670, 673-74 (Colo. App. 1999) (concluding that the holding of *Duhon* had been superseded by later statutory amendment but finding no fault with the *Duhon* court's logic). The *Duhon* court concluded that the Board's power to issue subpoenas, while broad, remains limited by the other provisions of the Medical Practice Act. *Duhon*, 895 P.2d at 149. Indeed, "[t]he Board has no inherent authority to issue administrative subpoenas." *Id.* It has only that authority explicitly granted by the statute. *See id.*

¶ 31     Given that its subpoena power is not inherent, the Board must find some lawful purpose in the Medical Practice Act to support the

16

subpoena here. However, absent Policy 2014-01, there is no authority for the issuance of the Board's subpoena.

¶ 32    In the abstract, the Board may have had the authority to initiate a complaint against Dr. McLaughlin, even on its own motion, if it suspected he had engaged in unprofessional conduct.[7] *See* § 12-36-118(4)(a)(I).  However, the Board does not point to any provision in the extensive statutory definition of "unprofessional conduct" that Dr. McLaughlin was suspected of violating.  Indeed, a review of section 12-36-117 reveals that the Board can investigate complaints regarding violations of *validly adopted* agency rules. *See, e.g.*, § 12-36-117(1)(u) (including in the definition of

---

[7] We note that Dr. McLaughlin asserts, and the Board does not contest, that the Board could not have obtained the records subpoenaed here absent a referral from CDPHE because the information was maintained in a confidential registry.  *See* Colo. Const. art. XVIII, § 14(3)(a) ("No person shall be permitted to gain access to any information about patients in the state health agency's confidential registry, or any information otherwise maintained by the state health agency about physicians and primary care-givers, except for authorized employees of the state health agency in the course of their official duties . . . .").  As a practical matter, then, it may well have been impossible for the Board to investigate Dr. McLaughlin absent the referral from CDPHE.  However, we express no opinion as to whether the Colorado Constitution invalidates either Policy 2014-01 or the subpoena at issue on this basis.

"unprofessional conduct" the "[v]iolation of . . . any rule or regulation *promulgated by the board in conformance with law*") (emphasis added); § 12-36-117(1)(mm) (including in the definition of "unprofessional conduct" the failure to comply with statute authorizing medical marijuana program or "the rules promulgated by [CDPHE] *pursuant to section 25-1.5-106(3)*") (emphasis added). Because Policy 2014-01 was not validly adopted, those provisions have no relevance here.

¶ 33    Similarly, as already noted, CDPHE can refer a physician to the Board for investigation if it "has reasonable cause to believe" that a physician violated rules *promulgated pursuant to its rulemaking authority.* § 25-1.5-106(6)(a). However, given that Policy 2014-01 was not promulgated pursuant to its rulemaking authority, CDPHE had no reasonable basis for referring Dr. McLaughlin to the Board. Without Policy 2014-01, there was no basis for CDPHE's referral to the Board; because the policy was void, the referral was void, and it is thus as if there were no complaint at all to prompt the Board's investigation.

¶ 34    During oral argument, the Board asserted that the purpose of Policy 2014-01 was to allow CDPHE to make referrals on the basis

of its "suspicion" that a physician had violated the statutes governing medical marijuana certification. Yet, the Board also acknowledged that the criteria enumerated in Policy 2014-01 were not necessarily indicative of any misconduct, much less a violation of the medical marijuana laws; instead, any determination that a physician had violated the Medical Practice Act could be made only after an investigation. To the extent that the Board argued that Policy 2014-01 served as a proxy to measure possible misconduct, we disagree because an alleged "violation" of an invalid policy could not provide a lawful basis for suspecting misconduct.

¶ 35    The Board relies on a 1946 Supreme Court case, *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), in support of its argument that it can initiate an investigation without any suspicion of misconduct and may engage in a "fishing expedition." We consider the Board's reliance on *Walling* misplaced.

¶ 36    First, in that case, the Supreme Court looked to a federal agency's virtually unchecked statutory power to conduct investigations; the relevant agency was expressly authorized to

> enter and inspect such places and such
> records (and make such transcriptions
> thereof), question such employees, and

19

> investigate such facts, conditions, practices, or matters as [the agency's Administrator] may deem appropriate to determine whether any person has violated any provision of [the Fair Labor Standards Act], or which may aid in the enforcement of the provisions of th[e] Act.

*Id.* at 199 (quoting 29 U.S.C. § 211(a) (1946)).  Turning to the agency's subpoena power, the *Walling* Court specifically noted that "[n]othing in the [legislative history of the Act] suggests that the power was not to be exercised, or that subpoenas issued in compliance with the terms of the statute were not to be enforced, exactly in accordance with the authority given."  *Id.* at 198 n.22. Thus, the subpoena in *Walling* was lawful because the agency acted in "exact compliance" with the statute authorizing its investigations. *Id.* at 201.  In fact, the Court contrasted its holding in *Walling* with another case in which the Court wrote that "nothing short of the most explicit [statutory] language" would permit "fishing expeditions into private papers on the possibility that they may disclose evidence of crime."  *Id.* at 201 n.27 (quoting *Fed. Trade Comm'n v. Am. Tobacco Co.,* 264 U.S. 298, 306 (1924)).[8]

---

[8] The Board similarly overstates the significance of *United States v. Powell*, 379 U.S. 48 (1964), and *United States v. Morton Salt Co.,*

¶ 37   Moreover, the Board's reliance on *Walling* mistakenly blurs the distinction between an agency's authority to initiate an investigation and the lawfulness of any subpoena issued pursuant to that investigation.  The Board maintains that it can lawfully subpoena a physician's records as part of a "fishing expedition."  While that position is inconsistent with the Supreme Court decisions discussed above, we are not required here to determine the level of suspicion that would justify a Board investigation.  The issue we address is the validity of the Board's subpoena, not the propriety of the investigation itself.  As *Charnes* dictates, any subpoena must have "a lawfully authorized purpose."  200 Colo. at 101, 612 P.2d at 1122.  We have determined that the subpoena here had no lawful purpose.

---

338 U.S. 632 (1950).  In *Powell,* the Court rejected the argument that an administrative summons could only issue on probable cause, but noted that a court can "inquire into the underlying reasons" for the summons to ensure "that the investigation will be conducted pursuant to a legitimate purpose."  379 U.S. at 57, 58.  In *Morton Salt,* the Court similarly affirmed the Federal Trade Commission's power to require companies to file reports stating compliance with a court decree, noting that "there are limits to what, in the name of reports, the Commission may demand," but not "attempt[ing] to define" those limits.  338 U.S. at 653.

¶ 38    Accordingly, we conclude that the district court erred in enforcing the subpoena.

### III.  Injunctive Relief

¶ 39    Dr. McLaughlin asserts that the proper remedy is to permanently enjoin the Board from issuing subpoenas based on Policy 2014-01.

¶ 40    The Board sets forth several arguments regarding this court's jurisdiction to enjoin it from issuing further subpoenas under the policy.  Specifically, it argues that the court lacks subject matter jurisdiction to grant injunctive relief because (1) separation of powers principles preclude such a remedy; (2) the claim is not ripe; and (3) Dr. McLaughlin lacks standing.

¶ 41    We conclude that the issue of injunctive relief is moot insofar as it would prevent the Board from issuing future subpoenas to Dr. McLaughlin based on alleged "violations" of Policy 2014-01.  As noted, a district court enjoined CDPHE from making further referrals on the basis of Policy 2014-01.  We have determined that the district court erred in enforcing the subpoena in this case. Because CDPHE cannot again refer Dr. McLaughlin to the Board on the basis of the invalid policy, "the [injunctive] relief sought, if

22

granted, would have no practical legal effect." *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 970 (Colo. 1997).

## IV.  Conclusion

¶ 42    The district court's judgment enforcing the subpoena is reversed.

JUDGE HARRIS concurs.

JUDGE BOORAS dissents.

JUDGE BOORAS, dissenting.

¶ 43    I would affirm the trial court's judgment for the reasons stated in *Colorado Medical Board v. Boland*, 2018 COA 39.  Therefore, I respectfully dissent from the majority opinion.

¶ 44    Additionally, I would reject the majority's conclusion that the subpoena in this case "had no lawful purpose," and was therefore an improper "fishing expedition."

¶ 45    The concept of "an illegal fishing expedition" in the area of administrative law has evolved greatly in recent times.  *See Sec. & Exch. Comm'n v. Arthur Young & Co.*, 584 F.2d 1018, 1029-30 (D.C. Cir. 1978).  As the United States Court of Appeals for the Tenth Circuit has noted:

> The law governing the limits on the administrative power of investigation has evolved from the earlier judicial condemnation of fishing expeditions to that of enforcement of the subpoena power 'if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'

*Equal Emp't Opportunity Comm'n v. Univ. of New Mexico, Albuquerque*, 504 F.2d 1296, 1302 (10th Cir. 1974) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).  In this appeal,

Dr. McLaughlin challenges only whether the subpoena was for a lawfully authorized purpose; he does not contest its breadth or relevancy.

¶ 46    Whether an investigation is for a lawfully authorized purpose rests on whether it is within the scope of the agency's authority. For example, while the Board has broad authority to investigate matters related to the practice of medicine, it would not have the authority to investigate whether a physician built his residence in violation of a local ordinance or a statute regulating the building of homes.

¶ 47    Importantly, the Board's authority to investigate matters related to the practice of medicine does not depend on receiving a complaint. The majority faults the Board for not identifying which provision of the statutory definition of unprofessional conduct it suspected Dr. McLaughlin was violating. However, an administrative agency

> can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

25

*Morton Salt Co.*, 338 U.S. at 642-43 (comparing the investigative power of an administrative agency to the powers of a grand jury).

¶ 48    The majority points to language in *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), and *Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 306 (1924), as disapproving "fishing expeditions."  However, the concerns in those cases were directed at the breadth and relevance of an administrative subpoena, rather than its purpose.  *See Walling*, 327 U.S. at 209 (stating that beyond requirement that an investigation be authorized by Congress, reasonableness "comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry"); *Am. Tobacco Co.*, 264 U.S. at 306 ("It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up.").  In contrast, as noted above, Dr. McLaughlin does not challenge the breadth or relevance of the subpoena at issue in this case.  So the question here is whether the Board had the authority to issue the subpoena.

¶ 49    By statute the Board has authority to investigate "matters relating to the exercise and performance of the powers and duties

26

vested in the board," including possible discipline for unprofessional conduct. §§ 12-36-104(1)(b)(I), 12-36-117, C.R.S. 2017. The Board may start an investigation based upon a citizen complaint, but it also has the authority to initiate and investigate a complaint itself. § 12-36-118(4)(a)(I), C.R.S. 2017; *Bd. of Med. Exam'rs v. Duhon*, 895 P.2d 143, 147 (Colo. 1995). Because the Board has the authority to investigate without receiving a complaint, its investigation is not "tainted" by any violation of the Colorado Open Meetings Law (OML) by a different agency, even if that agency forwarded a complaint to the Board. The underlying basis for issuing the subpoena is irrelevant if the Board had authority to issue it.

¶ 50   As the majority recognizes, the Supreme Court stated in *United States v. Powell*, 379 U.S. 48 (1964), that courts may inquire into the underlying reasons for a summons under circumstances rising to the level of an abuse of process. The Court's examples of such appropriate circumstances reflected on the good faith of an investigation and included harassing a taxpayer or pressuring him into settling a collateral dispute. Reliance on a referral policy that was promulgated in violation of the OML by CDPHE does not

27

constitute bad faith or harassment by the Board. Therefore, I would disagree with the majority's conclusion that the subpoena here had no lawful purpose.

¶ 51 Accordingly, I respectfully dissent.