The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

## 2018COA39

**No. 16CA1269, Colo. Med. Bd. v. Boland — Administrative Law — State Administrative Procedure Act — Colorado Sunshine Act — Open Meetings Law — Professions and Occupations — Colorado Medical Board — Disciplinary Procedures — Subpoenas**

In this subpoena enforcement action, a division of the court of appeals considers whether a subpoena issued by the Colorado Medical Board (Board) in relation to an investigation of a physician's medical marijuana recommendations had a lawful purpose.  The majority concludes that the subpoena was issued for the lawfully authorized purpose of investigating whether the physician had engaged in unprofessional conduct, even assuming that the subpoena arose from a policy adopted by a different agency in violation of the Open Meetings Law.  Accordingly, the majority affirms the district court's judgment enforcing the subpoena.

The dissent agrees with the majority in *Colorado Medical Board v. McLaughlin*, 2018 COA 41, also announced today. Thus, the dissent would reverse the district court's judgment enforcing the subpoena because it concludes that the subpoena was issued without lawful purpose and solely as a result of a physician referral policy promulgated in violation of the Open Meetings Law and the State Administrative Procedure Act.

Court of Appeals No. 16CA1269
City and County of Denver District Court No. 15CV30883
Honorable Ross B.H. Buchanan, Judge

Colorado Medical Board,

Petitioner-Appellee,

v.

James Boland, MD,

Respondent-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE RICHMAN
Furman, J., concurs
Taubman, J., dissents

Prior Opinion Announced January 18, 2018, <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON January 18, 2018, IS NOW DESIGNATED FOR PUBLICATION

Announced March 22, 2018

Cynthia H. Coffman, Attorney General, Eric Maxfield, First Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Hershey Decker PLLC, Carmen N. Decker, Matthew George, Lone Tree,
Colorado, for Respondent-Appellant

¶ 1     In this subpoena enforcement action, respondent, Dr. James Boland, appeals the district court's judgment enforcing a subpoena issued by plaintiff, the Colorado Medical Board (Board). The Board issued the subpoena after the Colorado Department of Public Health and Environment (CDPHE) referred Dr. Boland to the Board. On appeal, Dr. Boland contends the Board subpoena was not issued for a lawful purpose because CDPHE adopted the policy prompting the Board's investigation in violation of Colorado's Open Meetings Law, the State Administrative Procedure Act (APA), and the Colorado and United States Constitutions. We disagree, conclude the Board issued the subpoena for a lawful purpose, and affirm the district court's judgment.

¶ 2     We recognize that another divided division of this court is announcing today *Colorado Medical Board v. McLaughlin*, 2018 COA 41, reversing the judgment of the district court enforcing a subpoena issued on the basis of the same challenged policy. In *McLaughlin*, the division concludes that the policy is invalid, and therefore that subpoena lacked a lawful purpose. For the reasons stated herein, we disagree with that analysis.

1

## I. Background

### A. The Subpoena

¶ 3    Dr. Boland is a physician licensed to practice in Colorado.  In November 2014, Dr. Boland received a subpoena duces tecum from the Board.  The subpoena ordered him to produce medical records for patients age thirty or under examined on three particular dates in 2013.

¶ 4    A letter accompanying the subpoena explained that the Board had received information regarding Dr. Boland's conduct as a physician and a possible violation of the Medical Practice Act.  The letter requested a response from Dr. Boland within thirty days.

¶ 5    The letter also noted that the Board had received a complaint from CDPHE related to Dr. Boland's medical marijuana recommendations.  Specifically, the letter stated that "the Medical Marijuana Registry's physician referral policy dictate[d] that [CDPHE] will refer physicians who are above the approved threshold for one or more of" three enumerated criteria: (1) a caseload of 3521 medical marijuana patient recommendations per year; (2) recommendations of an increased plant count for more than thirty percent of patients; or (3) a patient caseload in which over one-third

is under the age of thirty. According to the letter, CDPHE referred Dr. Boland to the Board for investigation on the basis of the last two criteria.

¶ 6 When he received the subpoena and letter, Dr. Boland was unaware of any "physician referral policy." He sent a written objection to the Board, arguing that CDPHE's referral policy was invalidly adopted. On that basis, Dr. Boland refused to produce the subpoenaed records.

¶ 7 In March 2015, the Board filed an application for an order enforcing the subpoena, citing section 12-36-104, C.R.S. 2017. In June 2016, the district court granted the Board's application and ordered Dr. Boland to produce the subpoenaed records. That order is the subject of this appeal. The district court concluded that, even if the physician referral policy was invalid, only CDPHE could be enjoined from enforcing it, not the Board. The district court subsequently stayed enforcement of the order pending this appeal.

### B. CDPHE and the Board

¶ 8 Pursuant to an executive order signed by Colorado's governor, CDPHE is the health agency designated to manage Colorado's medical marijuana program. *See* § 25-1.5-106(2)(f), C.R.S. 2017;

*see generally* § 25-1.5-106.  CDPHE is required to promulgate rules governing certain aspects of the program.  *See* § 25-1.5-106(3)(a) (CDPHE "shall . . . promulgate rules of administration"); *see also* Colo. Const. art. XVIII, § 14(9) (stating that the state health agency "shall also enact rules of administration").

¶ 9      For example, CDPHE must promulgate rules to establish a confidential registry of patients who are entitled to receive a medical marijuana identification card.  § 25-1.5-106(3)(a)(I).  CDPHE is also required to promulgate rules concerning the conditions for issuing registry identification cards to patients, which entails creating "standards for ensuring that [CDPHE] issues a registry identification card to a patient only if he or she has a bona fide physician-patient relationship with a physician in good standing." § 25-1.5-106(3)(a)(V).  If CDPHE "has reasonable cause to believe" that a physician violated rules promulgated pursuant to its rulemaking authority, it can refer the matter to the Board for "an investigation and determination."  § 25-1.5-106(6)(a).[1]

_____

[1] CDPHE can also refer a physician to the Board if it has reasonable cause to believe the physician violated section 14 of article XVIII of the Colorado Constitution, or section 25-1.5-106(5)(a)-(c), which

¶ 10    The Board is a body created by the Medical Practice Act. § 12-36-103(1)(a)(I), C.R.S. 2017.  The Board is tasked with investigating allegations of "unprofessional conduct."  § 12-36-117, C.R.S. 2017.  It is authorized by statute to "[m]ake investigations, hold hearings, and take evidence."  § 12-36-104(1)(b)(I); *see also* § 12-36-118, C.R.S. 2017 (describing the structure of the Board's inquiry and hearing panels, and the process for initiating a complaint against a physician).  In the exercise of its investigatory function, the Board has the power to issue subpoenas to compel production of "materials in any hearing, investigation, accusation, or other matter coming before [it]."  § 12-36-104(1)(b)(II).

C.    Development of the Physician Referral Policy

¶ 11    After receiving the subpoena and accompanying letter, Dr. Boland filed a Colorado Open Records Act request with CDPHE, the Board, and the Department of Regulatory Agencies, asking for public records related to the drafting of the physician referral policy.

---

lists requirements for physicians who recommend medical marijuana to patients.  Here, the parties agree neither applies and CDPHE based its referral solely on the criteria listed in the physician referral policy.

In response, the Board produced internal communications detailing the policy's evolution and adoption.

¶ 12    The correspondence revealed that in the fall of 2013, based on a recent state audit, "CDPHE officials reached out to the Board requesting assistance in developing reporting parameters for medical marijuana prescribers." The Board and Office of Investigations (OI) (a subdivision of the Department of Regulatory Agencies) worked with CDPHE to identify and define potential reporting criteria. An email states that after a period of extended silence from CDPHE, the Board and OI took a leadership role and "frequently circled back" with CDPHE to promote progression of the project. CDPHE subsequently adopted an internal policy based on the criteria identified and/or defined by the CDPHE/Board/OI workgroup.

¶ 13    On May 15, 2014, CDPHE issued the physician referral policy, titled "Medical Marijuana Policy Number 2014-01" (Policy 2014-01). The policy states CDPHE will refer physicians to the Board for investigation based on the number of patients, the amount of marijuana recommended, and the age of the patients.

¶ 14    Dr. Boland alleges, and the Board does not dispute, that the policy was not available to the public until April 2015, nearly a year later, and that no public meeting was ever held on Policy 2014-01.

### D.    Related Litigation

¶ 15    In addition to the instant case, several other pending actions have challenged the validity of Policy 2014-01.  Six other subpoena enforcement actions have been filed against individual physicians who were referred to the Board based on Policy 2014-01.  Five of these cases have been stayed pending this appeal.  The sixth action has been separately appealed to this court.  Another division of this court decides that case today.  *McLaughlin*, 2018 COA 41.

¶ 16    Dr. Boland and eight other physicians have directly challenged the validity of Policy 2014-01 in yet another action.  In that case, however, the district court, in an order entered by Judge Hoffman on October 14, 2015, dismissed the relevant claims against the Board, stating as follows:

> This claim fails because the secret policy at issue was, by plaintiff's own description, a policy involving the CDPHE's referral of cases to [the Board] for investigation.  That is, it was CDPHE's policy, not [the Board's] policy.  If this policy was in fact unlawfully adopted and is ultimately declared void, any injunctive relief

would necessarily be aimed at CDPHE to prohibit it from referring cases to [the Board] under the void policy. Nothing at all about the policy prevents [the Board] from initiating its own investigations based on whatever information that come to it from whatever source, proper or improper.

¶ 17    The district court in that case later ruled, in October 2016, that Policy 2014-01 was void and enjoined CDPHE from referring physicians to the Board under the policy. That decision is also the subject of an appeal to this court. *See John Does v. Colo. Dep't of Pub. Health & Env't*, No. 16CA2011 (Colo. App. filed Nov. 22, 2016).

¶ 18    However, in discussing available relief in that order, the district judge referred to Judge Hoffman's previous order dismissing the Board from the case, stating that it agreed with Judge Hoffman's analysis, finding "no case law or authority to support the position that this Court can or should order the Board to halt any investigations that were initiated as a result of those [CDPHE] referrals."

E.    District Court Opinion

¶ 19    In its order in this case enforcing the Board's subpoena, the district court noted that in the proceedings against CDPHE, the other district court had concluded that the alleged violation of the

8

Open Meetings Law involved only CDPHE's Policy 2014-01. Because the policy was not promulgated by the Board, nothing about the policy prevents the Board from initiating its own investigations based on whatever information comes to it from whatever source. Accordingly, the court concluded that because the Board has a statutory duty to investigate a licensed physician who engages in unprofessional conduct, and is vested with authority to conduct investigations and issue administrative subpoenas, the subpoena to Dr. Boland was issued for a lawfully authorized purpose.

¶ 20    The district court also concluded the subpoenaed documents requested by the Board are relevant to the stated inquiry, and "the subpoena is sufficiently specific to obtain documents that are tailored to the Board's inquiry."

¶ 21    On appeal, Dr. Boland again asserts that Policy 2014-01 was promulgated in violation of the Open Meetings Law. The Board does not expressly dispute that the policy was promulgated in violation of the Open Meetings Law, but rather asserts that the "taint, if any, would be on CDPHE's conduct" because "the policy is CDPHE's and not the Board's."

9

## II. Applicable Law

¶ 22    The Board is authorized to conduct investigations into complaints of unprofessional conduct by a medical licensee through "inquiry panels." Written complaints relating to the conduct of a medical licensee may be made by any person or may be initiated by an inquiry panel of the Board on its own motion. § 12-36-118(4)(a)(1).

¶ 23    A licensee about whom a complaint has been filed must be given written notice of the complaint, and an opportunity to respond. *Id.* Upon receipt of the licensee's response, or after thirty days, whichever comes first, the inquiry panel may take further action as set forth in the statute. One of the actions that may be taken is to conduct a further investigation, and in connection with such investigation the panel may issue subpoenas for relevant records. § 12-36-104(1)(b)(I)-(II).

¶ 24    Under Colorado's Open Meetings Law, "[n]o resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a meeting" open to the public pursuant to section 24-6-402(2), C.R.S. 2017. § 24-6-402(8). In short, a formal action taken at a meeting that does not comport

with the Open Meetings Law is "null and void." *Van Alstyne v. Hous. Auth.*, 985 P.2d 97, 100-01 (Colo. App. 1999); *see also Wisdom Works Counseling Servs., P.C. v. Colo. Dep't of Corr.*, 2015 COA 118, ¶ 25.

## III.    Standard of Review

¶ 25    The seizure of records under an administrative subpoena may be an unreasonable search in violation of the Fourth Amendment. But an administrative subpoena's seizure of records is reasonable if (1) the subpoena and investigation are for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents that are adequate but not excessive for the inquiry. *Charnes v. DiGiacomo*, 200 Colo. 94, 101, 612 P.2d 1117, 1122 (1980). This is a constitutional issue we review de novo. *See People v. Hopkins*, 870 P.2d 478, 482 (Colo. 1994) (citing cases holding courts review reasonableness determinations under Fourth Amendment de novo).

¶ 26    The issuing agency must demonstrate the propriety of an issued subpoena. *Colo. State Bd. of Accountancy v. Arthur Andersen LLP*, 116 P.3d 1245, 1248 (Colo. App. 2005). "If the agency fails to

11

demonstrate that the subpoena issued is for an authorized purpose, the court must refuse to enforce it." *Id.*

## IV. Analysis

¶ 27 Dr. Boland limits his appeal to the first prong of the *Charnes* test: whether the subpoena was issued for a lawful purpose. He contends that, because CDPHE based its referral on Policy 2014-01, and because CDPHE unlawfully adopted Policy 2014-01, the Board's subpoena caused by CDPHE's referral had no lawful purpose.

¶ 28 In contrast, the Board contends that, even if Policy 2014-01 is invalid, it nevertheless had the authority to issue the subpoena to investigate whether Dr. Boland engaged in unprofessional conduct. The district court adopted this argument.

¶ 29 We agree with the district court that the subpoena was issued for a lawful purpose, even assuming Policy 2014-01 was adopted in violation of the Open Meetings Law. "Purpose" is "an objective, goal or end." Black's Law Dictionary 1356 (9th ed. 2009). It is a forward looking term, which here describes the Board's objective to investigate possible unprofessional conduct. Whatever the source

of the Board's initiating step, the purpose of the subpoena and the investigation is lawful.

¶ 30     We will assume, for purposes of this appeal, that the other district court correctly concluded in its October 2016 order that CDPHE adopted Policy 2014-01 in violation of the Open Meetings law, although we are not bound by that decision.  That policy is not a Board rule.  As Judge Hoffman found, the policy is CDPHE's, not the Board's.

¶ 31     And, although the Board helped CDPHE create Policy 2014-01, the Board never induced CDPHE to, or suggested it should, adopt the rule without public notice or public meetings, or otherwise complying with the Open Meetings Law.

¶ 32     CDPHE apparently referred Dr. Boland to the Board in the summer of 2014, although the exact date is not in the record.  This was long before any district court found CDPHE violated the Open Meetings Law and enjoined enforcement of Policy 2014-01.

¶ 33     Accordingly, CDPHE's conduct does not determine whether the Board acted lawfully in issuing the subpoena to Dr. Boland.

¶ 34    A "written complaint" about a medical licensee "may be made by any person." § 12-36-118(4)(a)(I).  "Person" includes government agencies and subdivisions.  § 2-4-401(8), C.R.S. 2017.

¶ 35    Upon receiving a complaint, the Board's inquiry panel "may take further action" after giving the licensee an opportunity to answer or explain the matters described in the complaint. § 12-36-118(4)(a)(I).  This provision permits, but does not require, further investigation (as compared to subsection (b), which mandates investigations in certain circumstances).

¶ 36    If the Board decides to investigate, it may issue subpoenas to produce relevant records.  § 12-36-104(1)(b)(II).  If the subpoena meets the three *Charnes* requirements, the subpoena is constitutionally valid and enforceable.

¶ 37    In *Board of Medical Examiners v. Duhon*, the supreme court invalidated a Board subpoena.  895 P.2d 143, 146-47 (Colo. 1995). The court construed the prior version of the section authorizing subpoenas with the section authorizing investigations.  Neither differs substantially from the provisions at issue here.

¶ 38    The *Duhon* court ruled the Board may only issue a subpoena in connection with a Board hearing, or in connection with an

14

investigation.  *Id.* at 147-49.  *Duhon* invalidated a subpoena issued to investigate a physician's allegedly unprofessional conduct because the Board issued it before the required response time expired.  *Id.*; *see also Colo. State Bd. of Med. Exam'rs v. Khan*, 984 P.2d 670, 673-74 (Colo. App. 1999) (concluding statutory amendment superseded *Duhon* but not disagreeing with *Duhon*'s logic).

¶ 39    No timing issue is present here.  The Board received a complaint, gave Dr. Boland an opportunity to respond, which he did, and then issued the subpoena.  The purpose of the investigation is to ascertain whether he acted unprofessionally.  Under these circumstances, we conclude the Board subpoena had a lawful purpose, and we affirm the district court's order.

¶ 40    We note that ordering enforcement of the subpoena does not confirm, or even suggest, that Dr. Boland acted unprofessionally.  Nor does producing documents requested by the subpoena preclude Dr. Boland from arguing that conduct covered by the standards contained in Policy 2014-01 is not indicative of unprofessional conduct.  At this point, Dr. Boland's only obligation is to produce documents to permit the Board's investigation.

## V.     Other Arguments

¶ 41     Dr. Boland also argues that referral by CDPHE violated his rights under the Colorado Constitution, section 25-1.5-106, and the First Amendment to the United States Constitution.  These arguments were not made to the district court, and we decline to reach them here.  *See People v. Whitlock*, 2014 COA 162, ¶ 40; *People v. Welsh*, 176 P.3d 781, 793 (Colo. App. 2007).  However, we note that to the extent provisions of article XVIII, section 14(2)(c) of the Colorado Constitution, regarding a physician's right to advise a patient diagnosed with a debilitating medical condition, apply to Dr. Boland, he may assert such protection in any disciplinary action taken by the Board.

## VI.     Conclusion

¶ 42     Accordingly, the district court's judgment enforcing the subpoena is affirmed.

JUDGE FURMAN concurs.

JUDGE TAUBMAN dissents.

16

JUDGE TAUBMAN, dissenting.

¶ 43    Can a subpoena issued solely as a result of an invalid agency policy nevertheless have a lawful purpose?  While the majority answers this question in the affirmative, I dissent because I conclude that the subpoena here, which was based only on an unlawfully adopted referral policy, had no lawful purpose.

¶ 44    In November 2014, respondent, Dr. James Boland, received a subpoena duces tecum from the petitioner, Colorado Medical Board (Board).  The subpoena directed him to produce the medical records concerning medical marijuana recommendations for certain patients examined on three dates.  A letter delivered with the subpoena explained that the Board had received a complaint from the Colorado Department of Public Health and Environment (CDPHE) regarding Dr. Boland's medical marijuana recommendations.  CDPHE had referred Dr. Boland for investigation based on the "Medical Marijuana Registry's physician referral policy."

¶ 45    According to the Board's letter, that physician referral policy enumerated three bases on which CDPHE would refer physicians to the Board for investigation: (1) a caseload of 3521 or more medical

17

marijuana patient recommendations per year; (2) recommendations of an increased plant count for more than thirty percent of patients; or (3) a patient caseload in which over one-third of patients are under the age of thirty. Dr. Boland had no knowledge of any such referral policy when he received the subpoena. He refused to produce the subpoenaed documents, leading the Board to file an application for an order enforcing the subpoena. The district court granted the Board's application, a decision that Dr. Boland now appeals.[1]

¶ 46     Agency records obtained by Dr. Boland via a Colorado Open Records Act request revealed that the drafting of the referral policy began in the fall of 2013. An August 2014 email from the Board's program director detailed how, after a 2013 state audit, "CDPHE reached out to [the Board] requesting assistance in developing reporting parameters" for physicians who made medical marijuana recommendations. The email further reveals that, "[a]fter a period of extended silence from CDPHE, [the Board and Office of Investigators (OI)] took a leadership role and frequently circled back

---

[1] As the majority notes, that order has been stayed by the district court, pending the outcome of this appeal.

with CDPHE to promote progression of the project. CDPHE subsequently adopted an internal policy based on the criteria identified and/or defined by the CDPHE/[Board]/OI workgroup." In May 2014, CDPHE issued the official referral policy, Medical Marijuana Policy Number 2014-01 (Policy 2014-01). However, Policy 2014-01 was not made public until April 2015. There were no public meetings on Policy 2014-01.

¶ 47 Dr. Boland asserts on appeal, as he did in the district court, that Policy 2014-01 was promulgated in violation of Colorado's Open Meetings Law and the State Administrative Procedure Act (APA). He further contends that the Board's subpoena is unenforceable because it was based solely on a referral made pursuant to the invalid Policy 2014-01. I agree.

¶ 48 An administrative subpoena is valid if (1) the subpoena and investigation are for a lawfully authorized purpose; (2) the information sought is relevant to the inquiry; and (3) the subpoena is sufficiently specific to obtain documents that are adequate but not excessive for the inquiry. *Charnes v. DiGiacomo*, 200 Colo. 94, 101, 612 P.2d 1117, 1122 (1980). Dr. Boland challenges the subpoena's validity on the basis of the first *Charnes* factor —

whether the subpoena and investigation had "a lawfully authorized purpose." *Id.* Unlike the majority, I conclude that the Board's subpoena was not issued for a lawful purpose because the policy that prompted the investigation of Dr. Boland is void.

¶ 49 The majority assumes that Policy 2014-01 is invalid. In my view, Policy 2014-01 is invalid because it was adopted in violation of Colorado's Open Meetings Law and the APA.

I. Validity of Policy 2014-01 Under Open Meetings Law

¶ 50 Under Colorado's Open Meetings Law, "the formation of public policy is public business and may not be conducted in secret." § 24-6-401, C.R.S. 2017. Thus, "[a]ll meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken" must be open to the public at all times. § 24-6-402(2)(a), C.R.S. 2017. Further, any meeting at which a proposed policy is adopted may be held only after "full and timely notice to the public." § 24-6-402(2)(c). A "state public body" includes any board or "formally constituted body of any state agency." § 24-6-402(1)(d)(I).

¶ 51 "No resolution, rule, regulation, ordinance, or formal action of a state or local public body shall be valid unless taken or made at a

20

meeting" open to the public pursuant to the Open Meetings Law. § 24-6-402(8). Thus, any formal action taken at a meeting that does not comply with the law's requirements is "null and void." *Van Alstyne v. Hous. Auth.*, 985 P.2d 97, 100-01 (Colo. App. 1999).

¶ 52 Dr. Boland maintains that Policy 2014-01 was promulgated in violation of the Open Meetings Law. As the majority acknowledges, the Board does not expressly dispute Dr. Boland's contention. I agree with Dr. Boland that Policy 2014-01 was adopted in violation of the Open Meetings Law and is therefore void.

¶ 53 The purpose of the Open Meetings Law is to allow interested members of the public to comment on public business. *See Benson v. McCormick*, 195 Colo. 381, 383, 578 P.2d 651, 653 (1978) (stating that the Open Meetings Law reflects the judgment that "democratic government best serves the [state] if its decisional processes are open to public scrutiny"). Here, physicians and other stakeholders did not have an opportunity to weigh in on Policy 2014-01. Instead, CDPHE and Board officials drafted the policy over the course of multiple meetings held behind closed doors and without notice to

the public.[2]  I therefore conclude that Policy 2014-01 is void.  *See*

§ 24-6-402(8).

## II.  Validity of Policy 2014-01 Under the APA

¶ 54     Moreover, I similarly find the policy invalid under Colorado's

APA.  An agency that is statutorily permitted to make rules must

follow procedures to give public notice and allow for public

comment under the APA.  § 24-4-103, C.R.S. 2017.  A "rule" is

defined as a "statement of general applicability and future effect

implementing, interpreting, or declaring law or policy or setting

forth the procedure or practice requirements of any agency."

§ 24-4-102(15), C.R.S. 2017.  The definition of "rule" includes a

---

[2] I recognize that CDPHE is not a party to the present appeal and has not been given an opportunity to assert here that it did not violate the Open Meetings Law or the APA.  However, I also recognize that, in related litigation, a district court found that the "policy was the product of about a dozen meetings and about a dozen phone calls between staff members with [CDPHE] and staff at the Board" and "was adopted and implemented without providing public notice."  Order at 7-8, *John Does v. Colo. Dep't of Pub. Health & Env't*, No. 15CV30902 (City & Cty. of Denver Dist. Ct. Oct. 4, 2016).  Thus, the district court in that case found that CDPHE had violated the Open Meetings Law in promulgating Policy 2014-01 and, while this court is not bound by that decision, I believe it is persuasive.  That decision is also the subject of an appeal to this court.  *See John Does v. Colo. Dep't of Pub. Health & Env't*, No. 16CA2011 (Colo. App. filed Nov. 22, 2016).

"regulation." *Id.* "'[S]ubstantial compliance' with the rule-making procedures established in [section] 24-4-103 is required, and an agency's failure to meet that standard renders a rule invalid." *Studor, Inc. v. Examining Bd. of Plumbers of Div. of Registrations*, 929 P.2d 46, 48 (Colo. App. 1996) (quoting § 24-4-103(8.2)(a)).

¶ 55    While the Board has statutory authority to "[a]dopt and promulgate" rules, it is required to follow the provisions of the APA in doing so. § 12-36-104(1)(a), C.R.S. 2017. Similarly, CDPHE, as an agency under the APA, is bound to follow notice and comment rulemaking procedures. *See* § 25-1.5-106(3), C.R.S. 2017 (establishing CDPHE's authority to make rules concerning the medical marijuana program). Here, there was no compliance with the procedural notice and comment requirements. I thus conclude that Policy 2014-01 is invalid under the APA.[3]

---

[3] Dr. Boland also asserts that Policy 2014-01 violated article XVIII, section 14(2)(c) of the Colorado Constitution and the First Amendment of the United States Constitution. Because I conclude that the policy was invalid under Colorado statutes, I need not address these arguments. *See City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo. 2006) ("Where possible, we avoid a constitutional analysis in favor of a statutory resolution.").

¶ 56      My conclusion would not inhibit CDPHE and the Board from

promulgating a policy concerning the criteria for referring a

physician to the Board for suspected misconduct under the medical

marijuana program.  Indeed, it is possible that CDPHE and the

Board might have arrived at the same policy even after taking into

account public comment.  Nevertheless, the agencies must comply

with the statutorily required procedures in adopting a physician

referral policy concerning physicians' medical marijuana

recommendations.  Policy 2014-01 was adopted without regard to

those statutory procedures and is thus void.

### III.  Enforceability of Subpoena

¶ 57      In light of my determination that Policy 2014-01 is invalid, I

would further conclude that the subpoena at issue here had no

lawful purpose and is therefore unenforceable.  An issuing agency

has the burden of demonstrating the propriety of an issued

subpoena.  *Colo. State Bd. of Accountancy v. Arthur Andersen LLP*,

116 P.3d 1245, 1248 (Colo. App. 2005).  "If the agency fails to

demonstrate that the subpoena issued is for an authorized purpose,

the court must refuse to enforce it."  *Id.*  The subpoena here was

based solely on the void policy.  Because I conclude that — after

setting aside the invalid Policy 2014-01 — there is no lawful purpose for the investigation or subpoena, I would reverse the district court's order.

¶ 58    The Medical Practice Act sets forth the Board's powers and duties. *See* § 12-36-104; *see also* § 12-36-103(1)(a)(I), C.R.S. 2017 (creating the Board). One of the Board's duties is investigating allegations of "unprofessional conduct." *See* § 12-36-117, C.R.S. 2017. To carry out this task, the Board is authorized to "[m]ake investigations, hold hearings, and take evidence in all matters relating to the exercise and performance of the powers and duties vested in [it]." § 12-36-104(1)(b)(I). In the exercise of its investigatory function, the Board can issue subpoenas to compel production of "materials in any hearing, investigation, accusation, or other matter coming before [it]." § 12-36-104(1)(b)(II); *see also* § 12-36-118(4)(a)(I)-(II), C.R.S. 2017 (authorizing Board inquiry panel to "conduct a further investigation" after initiating or receiving a written complaint).

¶ 59    Despite its broad investigatory power, the Board's authority is circumscribed by statute. In *Board of Medical Examiners v. Duhon*, the supreme court concluded that a subpoena issued to investigate

25

a physician's allegedly unprofessional conduct was invalid because the Board had failed to comply with procedural requirements concerning the timing of its investigation. 895 P.2d 143, 147, 149 (Colo. 1995); *see also Colo. State Bd. of Med. Exam'rs v. Khan*, 984 P.2d 670, 673-74 (Colo. App. 1999) (noting that the holding in *Duhon* had been superseded by later statutory amendment but finding no fault with the *Duhon* court's logic). Notwithstanding the Board's concerns about the physician's use of a particular treatment therapy, the supreme court invalidated the Board's subpoena because it failed to adhere to the procedural requirements for a proper investigation. *Duhon*, 895 P.2d at 149-50.

¶ 60    The majority reads *Duhon* as narrowly holding that the Board cannot issue a subpoena until it has commenced a disciplinary investigation. Although *Duhon* specifically addressed the proper timing of a Board subpoena, I read it more broadly to conclude that the Board's power to issue subpoenas, while expansive, nonetheless remains limited by the other provisions of the Medical Practice Act. *See id.* at 149. Indeed, as the *Duhon* court stated, "[t]he Board has

no inherent authority to issue administrative subpoenas." *Id.* It has only that authority explicitly granted by the statute. *See id.*

¶ 61 Here, the Board's subpoena must find some lawful purpose in the Medical Practice Act. Without Policy 2014-01 as its justification, I see no authority for the subpoena. In the abstract, as the majority notes, the Board may have had the authority to initiate a complaint against Dr. Boland, even on its own motion, if it suspected he had engaged in unprofessional conduct. *See* § 12-36-118(4)(a)(I). However, the Board does not point to any provision in the extensive statutory definition of "unprofessional conduct" that Dr. Boland was suspected of violating. Indeed, a review of section 12-36-117 reveals that the Board can investigate complaints regarding violations of *validly adopted* agency rules. *See, e.g.*, § 12-36-117(1)(u) (including in the definition of "unprofessional conduct" the "[v]iolation of . . . any rule or regulation *promulgated by the board in conformance with law*") (emphasis added); § 12-36-117(1)(mm) (including in definition of "unprofessional conduct" the failure to comply with statute authorizing medical marijuana program or "the rules promulgated by [CDPHE] *pursuant to section 25-1.5-106(3)*") (emphasis added).

27

Given my conclusion that Policy 2014-01 is void, those provisions cannot support the Board's subpoena here. Without Policy 2014-01, there was no basis for CDPHE to refer Dr. Boland to the Board; in my view, the policy was void, the referral was void, and it is thus as if there were no complaint at all to prompt the Board's investigation.

¶ 62     Looking to the Board's disciplinary powers under section 12-36-118 as well as its investigatory powers under section 12-36-104, the majority concludes that the Board had a lawful purpose for subpoenaing Dr. Boland's patient records — namely, "to ascertain whether he acted unprofessionally." *Supra* ¶ 40. However, the Board points to no evidence that its investigation was based on any suspicion of unprofessional conduct, aside from the alleged "violation" of Policy 2014-01.

¶ 63     Further, the majority agrees with the district court's assessment that Policy 2014-01 was CDPHE's, not the Board's, and accordingly concludes that "CDPHE's conduct does not determine whether the Board acted lawfully in issuing the subpoena to Dr. Boland." *Supra* ¶ 34. Essentially, then, the majority would permit the Board to issue a subpoena subsequent to launching any

28

investigation regardless of the source or propriety of the complaint that initiated that investigation.

¶ 64 I disagree with that analysis for two reasons. First, the record reflects the Board's active involvement — indeed, a self-proclaimed "leadership role" — in the development of Policy 2014-01. Thus, I believe the record undermines any determination that the policy was CDPHE's alone. Second, and even taking into account the Board's investigatory authority, I disagree that the Board's authority to issue a subpoena is so unchecked. As *Charnes* dictates, any subpoena must have "a lawfully authorized purpose." 200 Colo. at 101, 612 P.2d at 1122. I cannot say that the Board had a lawfully authorized purpose when it issued a subpoena based on an invalid policy, even if the policy was ultimately issued by CDPHE rather than the Board.

¶ 65 CDPHE and the Board worked together to create and adopt Policy 2014-01, which I conclude is void. That policy was the sole basis for CDPHE's referral. I therefore further conclude that, because the referral was invalidly based on the invalid policy, the Board's investigation and subpoena had no lawful purpose and

cannot be enforced.  Because I would reverse the district court's order enforcing the Board's subpoena, I respectfully dissent.